783 F.2d 410
 UNITED STATES of America, Appellee,
v.
Steven J. POLOWICHAK, a/k/a David Dan Dennison, Appellant.
UNITED STATES of America, Appellee,
v.
Robert HOLSHUE, Appellant.
UNITED STATES of America, Appellee,
v.
Walter A.J. PRICKETT, Appellant.
UNITED STATES of America, Appellee,
v.
William J. RAWLE, Appellant.
UNITED STATES of America, Appellee,
v.
James A. RAWLE, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Walter H. MALDONADO, a/k/a Carl Walter Wedemo, Appellant.
UNITED STATES of America, Appellee,
v.
Edward F. WIESMANN, Appellant.
 Nos. 84-5173(L), 84-5175, 84-5176, 84-5177 and 84-5198.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 8, 1985.
Decided Feb. 6, 1986.
 
 Sarah F. Crandall, Constance L. Rudnick (Gargiulo & McMenimen; Stephen H. Rosen, Lionel S. Lofton, O. Grady Query on brief) for appellants.
 Thomas E. Booth (Henry Dargan McMaster, U.S. Atty., Dale L. DuTremble, Asst. U.S. Atty., Patty Merkamp Stemler, Dept. of Justice, Robert J. Erickson, Deputy Chief, Appellate Section, Dept. of Justice on brief) for appellee.
 Before WINTER, Chief Judge, WILKINSON, Circuit Judge, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Seven defendants[1] appeal their jury convictions of various charges stemming from the importation of 111,600 pounds of marijuana, including violations of the Travel Act, 18 U.S.C. Sec. 1952(a)(3). All of the defendants contend that the manner in which the district court conducted the trial deprived them of a fair trial, that the district court committed reversible error by limiting the cross-examination of a government agent designed to reveal the identity of an unapprehended co-conspirator, and that the district court impermissibly amended the indictment when it instructed the jury regarding the charge of conspiracy to import marijuana. All of defendants attack their convictions of violating the Travel Act and aiding and abetting a violation of the Travel Act, contending that the district court committed error in its Travel Act instructions and that the jury's verdict on the Travel Act count was inconsistent with its verdict on other counts.
 
 
 2
 We conclude that there was reversible error in the submission of the Travel Act charges to the jury. We reverse the convictions of those charges and grant a new trial. Otherwise the judgment of the district court is affirmed.
 
 I.
 
 3
 The six appealing defendants, together with fifteen others, were named in an eleven-count indictment charging a conspiracy to import marijuana into the District of South Carolina (Count 1), conspiracy to possess marijuana with intent to distribute it within the District of South Carolina (Count 2), importation of marijuana (Count 3), possession of marijuana with intent to distribute (Count 4), travel in interstate commerce from Charleston, South Carolina to Philadelphia, Pennsylvania while in possession of marijuana with intent to promote a business involving marijuana (Count 6), similar travel in interstate commerce from Charleston, South Carolina to Middletown, New York (Count 7), and use of a telephone to transmit information between Florida and South Carolina to facilitate a narcotics violation (Count 10).[2] Defendants were convicted as follows:
 
 
 4
 Briefly stated, the various charges stemmed from the importation of a shipment of 111,600 pounds of marijuana off-loaded from a ship from South America to the Charleston, South Carolina area and trans-shipment of parts of the load, disguised as a load of paper products, to Philadelphia and New York. Other facts concerning the case will be stated in the discussion of the contentions to which they relate.
 
 
 5
 We consider first the contentions relating to the trial as a whole and then the contentions limited to the convictions under the Travel Act (Counts 6 and 7), and conspiracy to possess marijuana with intent to distribute it (Count 2).
 
 II.
 
 6
 Defendants' contention that they did not receive a fair trial rests upon the cumulative effect of numerous procedural and substantive irregularities. They identify as erroneous the district court's freely inviting and permitting jurors to question witnesses, permitting jurors to take notes, submitting to the jury an unredacted indictment reflecting charges and defendants not on trial, and failing to preserve the jury's written requests for supplemental instructions. While we do not approve of the manner in which the district court conducted the trial in a number of respects, we cannot conclude that the defendants were prejudiced or deprived of a fair trial.
 
 
 7
 In a case decided after the trial we review, we had occasion to examine at length the subject of questioning by jurors. See DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512 (4 Cir.1985).[3] There we pointed out the perils of questioning by jurors, and we suggested the means by which those dangers could be held to a minimum. We disapprove of the district court's inviting juror questioning in the instant case as well as permitting a juror to state his question within the hearing of the other jurors. Preferably, the district court should require jurors to submit questions in writing, without disclosing the question to other jurors, whereupon the court may pose the question in its original or restated form upon ruling the question or the substance of the question proper. Although we do not perceive that any question by any juror prejudiced any defendant, we strongly urge the district court in the exercise of its discretion to permit juror questioning in future cases only in strict adherence to the principles of DeBenedetto and what is said herein.
 
 
 8
 Note taking by jurors is a matter of discretion with the district court. See, e.g., United States v. Rhodes, 631 F.2d 43, 45 (5 Cir.1980). Without doubt, the complexity of a multi-count, multi-party drug prosecution such as the instant case would appear to justify permitting jurors to take notes. See United States v. MacLean, 578 F.2d 64 (3 Cir.1978); United States v. Bertolotti, 529 F.2d 149 (2 Cir.1975). But if jurors are permitted to take notes, they should be instructed that their notes are not evidence and should not take precedence over the jurors' independent recollections of the proceedings. Rhodes, 631 F.2d at 45-56; MacLean, 578 F.2d at 66-67; Bertolotti, 529 F.2d at 160. No such instruction was given in the instant case, but none was requested, and we do not think that the failure to give such an instruction was plain error warranting reversal and a new trial. See Rhodes, 631 F.2d at 45-46; United States v. Marquez, 449 F.2d 89, 93 (2 Cir.1971), cert. denied, 405 U.S. 963, 92 S.Ct. 1173, 31 L.Ed.2d 239 (1972).
 
 
 9
 The submission of an indictment to the jury is a discretionary matter with the district court. See, e.g., United States v. Coward, 669 F.2d 180, 184 (4 Cir.), cert. denied, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 470 (1982). If the indictment contains irrelevant allegations, ordinarily they should be redacted. But where, as here, the jury is unequivocally instructed that the indictment is not evidence, that the indictment is distributed solely as an aid in following the court's instructions and the arguments of counsel, and that certain counts should be disregarded as irrelevant to the defendants currently before the district court, we perceive no reversible error. See United States v. Coward, supra.
 
 
 10
 Immediately before the jury began its deliberations, defense counsel requested that any communications from the jury be in writing and that counsel be permitted to address the court as to its proposed response. The district court, however, only permitted counsel to be present when it addressed the jury and entertained objections following the issuance of supplemental instructions. The court summarized each question prior to answering it but did not preserve the questions themselves for the record. On at least two occasions, the district judge returned the jury to its deliberations after issuing supplemental instructions only to recall the jury immediately upon obtaining the views of counsel.
 
 
 11
 Unquestionably, the district court should obtain the views of counsel before giving a supplementary instruction, should require communications from the jury to be in writing or made in open court, and should preserve written questions as part of the record. See, e.g., United States v. Bascaro, 742 F.2d 1335, 1355 (11 Cir.1984); United States v. Johnpoll, 739 F.2d 702, 710-11 (2 Cir.1984); United States v. McDuffie, 542 F.2d 236, 240-41 (5 Cir.1976). Again, however, we see no prejudice to defendants in the district court's failure to follow the preferred practice.
 
 
 12
 Finally, we do not think that after giving a supplementary instruction on the law of possession and possession with intent to distribute, the district court committed reversible error in refusing to recall the jury for an instruction that the government had the burden of proving each offense beyond a reasonable doubt. That instruction had been repeatedly given previously and was repeated sua sponte once again in a later supplemental instruction.
 
 III.
 
 13
 We do not think that the district court erred in refusing to compel a government agent to disclose the identity of "Jay", a key co-conspirator still at large. The defense intended to use this information in three ways: (1) to impeach the credibility of Jay's statements as recounted by the agent, (2) to impeach the agent's testimony by showing his selective belief in Jay's statements, and (3) to lead to the discovery of exculpatory evidence. However, the marginal impeachment value of Jay's use of a pseudonym cannot overbalance the public interest in apprehending the fugitive Jay. See Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
 
 
 14
 Similarly, the withholding of Jay's identity did not deprive the defendants of potentially exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brady did not create a criminal right analogous to discovery in a civil case. Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). According to the line of authority following Brady, the remote possibility that Jay's identity would have helped the defense does not require the government to disclose the requested information. United States v. Agurs, 427 U.S. 97, 109-13, 96 S.Ct. 2392, 2400-02, 49 L.Ed.2d 342 (1976). In this case, defendants have speculated that this information might have led them to Jay, who might have provided exculpatory evidence. Even had defendants succeeded in locating Jay, it seems unlikely that, a fugitive from justice, he would return to testify for defendants. Moreover, defendants present no reason to believe that Jay's testimony would prove exculpatory. Under these circumstances, we think that the district court properly balanced the interests of the defendants in requiring disclosure of Jay's identity against the interests of the government in opposing disclosure and correctly concluded to sustain the government's position.
 
 IV.
 
 15
 Counts 6 and 7 of the indictment alleged violations of the Travel Act, 18 U.S.C. Sec. 1952(a)(3).[4] The government's evidence showed that after the marijuana was delivered to Charleston, it was loaded onto three semitrailers behind rows of paper products to disguise the nature of the cargo. Defendants James Rawle, William Rawle, and Walter Prickett drove the trucks north, accompanied by "chase cars" containing other defendants. The trucks and the "chase cars" were under surveillance by government agents, and the two trucks driven by James and William Rawle were stopped in Philadelphia and the drivers arrested. Agents stopped the third truck, driven by Walter Prickett, in Middletown, New York, whereupon they arrested Prickett and the occupants of the accompanying "chase car."
 
 
 16
 The prosecution and the defense adduced conflicting evidence as to whether the truck drivers knew the nature of their cargo. The proof showed that the trailers were loaded out of the presence of the drivers by government agents who had infiltrated the conspiracy. The Rawles and Prickett owned only the cabs and not the trailers, and the drivers were never seen at the rear of the trailers. Evidence showed that one trailer had been sealed before it was turned over to the driver. While marijuana was not visible in the back of the trailer at road level because of the shield of paper products, there was evidence that the odor of marijuana outside of the trailers was unmistakable.
 
 
 17
 The parties do not dispute that travel in interstate commerce with the specific intent to promote a business enterprise involving marijuana constitutes an essential element of a violation of Sec. 1952(a)(3), with which the Rawles and Prickett were charged. We agree that this is the law. See United States v. Salsbury, 430 F.2d 1045, 1051 (4 Cir.1970). With respect to these three defendants, the major proof of such a specific intent would be evidence that they had knowledge of the load they were carrying. These defendants requested such an instruction.[5] The district court, however, gave no instruction. It merely identified the charges contained in Counts 6 and 7 of the indictment, failing to mention the statutory requirement of specific intent.[6] At the conclusion of the charge, counsel excepted generally for failure to give the requested instructions.
 
 
 18
 The district court's "charge" with respect to the Travel Act violations was totally inadequate. We have repeatedly said that we "cannot and will not affirm a conviction by a jury unless the District Court instructs as to the elements of the offense charged in the information or indictment, whether requested or not." United States v. Hutchison, 338 F.2d 991, 991 (4 Cir.1964); see also United States v. Head, 641 F.2d 174, 180 (4 Cir.1981); United States v. Harris, 346 F.2d 182, 184 (4 Cir.1965). There was not substantial compliance with this principle.
 
 
 19
 Before us, the government does not attempt to defend the adequacy of the charge. Rather its position is that defendants failed to object specifically to the omissions in the charge and they have therefore waived the right to appeal on these points, and that the failure to give a proper charge did not constitute plain error. The government points out that the plain error doctrine is to be invoked sparingly and only where a miscarriage of justice would otherwise result, United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982), and suggests that in this case, the instructions (or lack of instructions) were not so egregious as to undermine the fundamental fairness of the trial and bring about a miscarriage of justice, United States v. Young, --- U.S. ----, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). We cannot accept these arguments. Even if we assume that the general objection was insufficient to preserve the issue for appeal, we think that there was plain error in the charge.
 
 
 20
 This is a case in which there was essentially no charge on what constitutes a violation of the Travel Act. It is not a case in which a slight defect in the charge could be cured by other circumstances. See, e.g., United States v. Schmidt, 376 F.2d 751 (4 Cir.1967). Although the jury was told that the government must prove its allegations beyond a reasonable doubt and the indictment containing those allegations was furnished to the jury to assist them in following the case,[7] the jury's attention was never called to the Travel Act allegations in the fifteen-page indictment, they were never read to the jury nor were they explained.
 
 
 21
 We think that United States v. Baker, 693 F.2d 183 (D.C.Cir.1982), on which the government relies, is distinguishable. There, in a prosecution for selling government property in violation of 18 U.S.C. Sec. 641, the district court read the indictment to the jury and twice instructed that, in order to convict, it must find that the government had proved each element of the crime beyond a reasonable doubt. In listing the elements of the crime, the district judge omitted that the act must be done knowingly and willfully. Attempting to correct his omission, he reinstructed the jury that the defendant must have acted "knowingly or without authority (emphasis added)." Defendant therefore argued on appeal that use of the disjunctive "or" told the jury that all essential elements need not be proved. Because there was no objection to the charge, the court of appeals reviewed it under the plain error doctrine, and it held that there was no plain error. In support of this conclusion, the court reasoned that (1) the indictment correctly stated the intent requirement, (2) the district judge emphasized the intent requirement by defining "knowingly" and "willfully", and (3) the abundant direct evidence against defendant was overwhelming so that no miscarriage of justice had occurred.
 
 
 22
 Our case differs in significant respects. First, we deal with a much more complex indictment which was neither read nor explained to the jury. Second, the district judge, while stating generally that the government must prove every allegation of the indictment, did not specifically mention the requisite level of intent.[8] Third, the proof to convict the Rawles and Prickett is largely circumstantial and something less than overwhelming, so that misapprehension of the essential elements may have resulted in conviction despite the government's failure to meet its burden of proof on each element. For these reasons, we think that Baker is inapposite.
 
 
 23
 We recognize, of course, that counsel for both the defense and the prosecution in final arguments to the jury directed the jury's attention to whether the truck drivers knew what they were transporting. But the law is clear that the arguments of counsel cannot substitute for instructions by the court. Taylor v. Kentucky, 436 U.S. 478, 488-89, 98 S.Ct. 1930, 1936-37, 56 L.Ed.2d 468 (1978).[9] See also Goodwin v. Balkcom, 684 F.2d 794, 802-03 n. 8 (11 Cir.1982); United States v. Wolfson, 573 F.2d 216, 221 (5 Cir.1978).[10]
 
 
 24
 In sum, we know of no case in which a conviction was upheld in the absence of a jury charge. A charge was absent here, and we perceive no acceptable substitute. We therefore conclude that the convictions of defendants under Counts 6 and 7 must be reversed and defendants tried anew.
 
 V.
 
 25
 Defendants William and James Rawle and Walter Prickett contend also that their Travel Act convictions must be reversed because the jury acquitted them of substantive charges concerning acts that the interstate travel was intended to promote. United States v. Powell, --- U.S. ----, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), reaffirming Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), clearly establishes that if these defendants had been convicted of violations of the Travel Act in an error-free trial, they could not attack the validity of those convictions on the ground of inconsistency with a verdict of acquittal on another count. We think that it follows that potential inconsistency may not be asserted as a bar to retrial on the Travel Act counts.
 
 VI.
 
 26
 Defendants Wiesmann and Polowichak contend that the district court in giving supplemental instructions to the jury impermissibly amended Count 2 of the indictment charging a conspiracy to possess marijuana with the intent to distribute in violation of 21 U.S.C. Sec. 841. Section 2 of Count 2 alleged that defendants conspired to import marijuana, and section 3 charged that they assisted each other and facilitated these acts. Responding to a request for instructions regarding importation under Count 2, the district court instructed the jury that it could convict under Count 2 without finding conspiracy to import and suggested that the importation section was an accidental transposition from Count 1, which dealt solely with importation.
 
 
 27
 In this we see no error. Conspiring to import marijuana is not an element of the crime proscribed by Sec. 841. In United States v. Miller, --- U.S. ----, 105 S.Ct. 1811, 85 L.Ed.2d 99 (April 1, 1985), the Court held that "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." Id. at ----, 105 S.Ct. at 1815. Further, the Court stated that "[a] part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as a 'useless averment' that 'may be ignored' ", quoting from Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927). Id. at ----, 105 S.Ct. at 1815.
 
 
 28
 Count 2 charged a crime under Sec. 841 without the allegations that the district court instructed the jury to ignore. Therefore it was proper to treat those allegations as surplusage. There was no impermissible amendment.
 
 
 29
 AFFIRMED IN PART; REVERSED IN PART AND NEW TRIALS AWARDED.
 
 
 30
 WILKINSON, Circuit Judge, concurring in part and dissenting in part:
 
 
 31
 I dissent from the reversal of the Travel Act convictions. The majority finds the trial court's instructions to be "totally inadequate" only by failing to address the adequacy of the total jury charge. Isolating a six sentence excerpt from thirty-two pages of instructions as "the district court's entire mention of the Travel Act" ignores the fact that "the court's instructions must be viewed as a whole and not in isolated sentences." United States v. Lopez, 611 F.2d 44, 47 (4th Cir.1979); see also Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973). If so examined, the challenged instructions may be seen to have clearly told the jury to determine whether the defendants' travel in interstate commerce was with the specific intent to promote a business enterprise involving marijuana.[1]
 
 
 32
 The district court's charge consisted of three different parts. First, the court described general principles of legal evidence and reasoning. The court then outlined the eleven counts in the indictment, pointing in each count to its distinctive elements. In this section, for example, the court compared conspiracy offenses with substantive offenses and compared travel in interstate commerce with travel in foreign commerce. Consistent with that purpose, the majority's quoted Travel Act passages refer to the defendants' alleged movements from South Carolina to Pennsylvania and New York.
 
 
 33
 Finally, in the third and longest part of the instructions, the district court discussed in detail the important legal concepts that would inform the jury deliberations on all or several of the indictment counts. The court began by reviewing the idea of proof beyond a reasonable doubt. On completing that instruction, the court next turned to the pervasive issue of the defendants' states of mind. There the court said--only three transcript pages after the excerpt on which the majority relies--that "before the Government can prove anyone guilty beyond a reasonable doubt, or about any count, the Government's got to prove that that defendant, as to that particular count, and as to any count, acted knowingly and willfully" (emphasis added). Five sentences later, the court repeated this point: "the Government's got to prove, before any defendant can be convicted of any count, that the defendant knowingly and willfully violated the statute with which he is charged here violating" (emphasis added).
 
 
 34
 The court then properly elaborated these references to knowing and willful conduct, relating the terms to intention as opposed to "mistake or accident or innocence." The court concluded its discussion by noting that an act could be criminally willful only if performed "with specific intent to do something the law forbids." Read as a whole, these instructions directed the jury to vote for convictions on the Travel Act counts only upon finding that the defendants knew that they were transporting marijuana and thereby had "the intent to carry on or facilitate the carrying on of an unlawful activity." United States v. Salsbury, 430 F.2d 1045, 1051 (4th Cir.1970). Indeed, a more complete charge might well have been less favorable to the defendants by adding that if each defendant "reasonably could have been expected to know of these [drugs], he could not with impunity avert his gaze to avoid actual knowledge." Id. at 1050.
 
 
 35
 The majority's narrow focus is particularly disturbing because the procedural posture of this case is hardly favorable to defendants. At trial, these appellants accepted the jury charge by waiving objection under Fed.R.Crim.P. 30. The majority points to requested instructions but it is clear that the "mere submission of requested instructions ... does not satisfy the requirement of Rule 30." United States v. Byrd, 542 F.2d 1026, 1028 (8th Cir.1976). And while the majority notes that defendants lodged a "general objection," Rule 30 requires counsel to state "distinctly the matter to which he objects and the grounds of his objection." In a complex trial with lengthy instructions, where the universe of potential exceptions is large, the importance of specificity is self-evident. Yet the majority insists upon correcting a trial judge who was never given adequate notice and opportunity to correct his own instruction.
 
 
 36
 On appeal, therefore, we are concerned only with "plain errors" as defined by Fed.R.Crim.P. 52(b). Review for plain error prompted the original statement that an instruction "[does] not stand alone, but [is] to be taken with what preceded it and also with what followed." Boyd v. United States, 271 U.S. 104, 107-108, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926). This emphasis on context has in the subsequent examination of instructions for plain error involved not only a duty to view each passage with reference to the whole charge but also a duty "to view the charge itself as part of the whole trial." United States v. Park, 421 U.S. 658, 674, 95 S.Ct. 1903, 1913, 44 L.Ed.2d 489 (1975); see also Lopez v. United States, 373 U.S. 427, 435-36, 83 S.Ct. 1381, 1385-86, 10 L.Ed.2d 462 (1963). The jury, after all, considered the whole trial, and our mandate under Rule 52(b) is to decide if "it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.1982) (citations omitted).[2]
 
 
 37
 A survey of the entire record shows that this jury, even before the instructions, could not have failed to recognize that the knowledge and intentions of the defendants were crucial elements of the case. The court began the trial by describing the allegations of the indictment, noting that the Travel Act counts charged conduct "with intent to carry on an unlawful business enterprise; that is, the handling of marijuana." Following these descriptions, the court detailed the point that "all of these statutory violations must be done knowingly" and stressed that "every element of the offense charged against the defendant, the Government must prove beyond a reasonable doubt." In its attempt to discharge that burden of proof, the prosecution raised inferences about defendants' states of mind by offering a variety of evidence, including testimony about the unmistakable odor of marijuana from the trucks. In response, the defense called only one new witness, the owner of several trucking companies. The purpose of that witness was to show that drivers often do not know the cargo that their trucks carry. The effect of that witness was to show that the drivers' knowledge was crucial.
 
 
 38
 We must remember that the jury heard the trial court's charge after listening to these preliminary instructions from the bench and after receiving this evidence from the witness stand. We must remember, also, that the jury heard the trial court's charge while holding the published indictment: the Travel Act counts of the indictment alleged that the defendants had travelled in interstate commerce "with intent to promote" the previously described "business enterprise involving marijuana," and the court reminded the jury that "the Government has to prove, beyond a reasonable doubt, every fact that they charge, everything alleged." And we must remember, finally, that the jury considered the trial court's charge in conjunction with the attorneys' closing arguments, during which the continuing attention to knowledge and intent became even more direct, and the importance of the issue became even more obvious.
 
 
 39
 From the first moments of his summation, the prosecutor concentrated on the question of "whether or not the Rawles, Mr. Prickett and Mr. Holshue were merely present riding down the highway with no knowledge of what was going on." Holshue's lawyer centered his discussion on the contention that "the Government offered nothing, nothing in the way of evidence to show any knowledge, any intent, any willfulness on the part of Robert Holshue to violate any of the laws, or any of the statutes that are charged in this indictment." Prickett's attorney echoed that "what this boils down to, as far as Walter is concerned, what this boils down to as far as Walter's future is concerned, is a question of knowledge." And counsel for James and William Rawle encapsulated the entire controversy in his opening remark that "the whole key of this case is whether Jim and Bill Rawle knew that these trucks contained marijuana."
 
 
 40
 It was in this context that the jury interpreted the court's instruction that "the Government's got to prove, before any defendant can be convicted of any count, that the defendant knowingly and willfully violated the statute." Accordingly, it is in the same context that this court must assess the verdict of the jury. Every clue suggests that the jurors did predicate their votes on proper findings of knowledge and intent. The converse possibility--that the jurors took an isolated omission as a signal to ignore the role of intent in the Travel Act charges--is, to say the least, remote.
 
 
 41
 I fear that my perspective on this criminal trial differs from that of the majority in two respects. In United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982), the Court noted that "the Courts of Appeals long have recognized that the [plain error] power granted them by Rule 52(b) is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." By finding plain error here, the majority makes of trials a minuet of form and ignores the substance represented in the verdict.
 
 
 42
 Moreover, a trial judge is not some patriarch upon whose shoulders falls sole responsibility for every detail of the enterprise. A successful trial is rather a communicative and cooperative venture in which able counsel shoulder their burdens too. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). I am unable to square the majority's censure of the court in this case with its exoneration of counsel. A proper review of this trial would exact its proper measure of accountability from both.
 
 
 
 [1]
 After argument of these appeals, defendant Walter H. Maldonado moved to dismiss his appeal. We granted the motion, thus leaving the appeals of six defendants for us to decide
 
 
 [2]
 None of the appealing defendants was named in Counts 5, 8, 9 and 11
 Steven J. Polowichak Counts 1-4, 6 and 10
 Robert Holshue Count 6
 William Rawle and
 James Rawle Count 6
 Walter Prickett Count 7
 Edward J. Wiesmann Counts 2, 4, and 6
 
 
 [3]
 We note that DeBenedetto was tried by the same district judge who presided at the trial of the instant case. DeBenedetto was decided, however, after the trial of the instant case was concluded
 
 
 [4]
 The pertinent provisions of Sec. 1952(a)(3) are as follows:
 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to--
 ....
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
 and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 
 
 [5]
 The defendants' entire request for instructions on the Travel Act was as follows:
 
 
 [19]
 In order to find a defendant guilty of this offense, you must find the government has proven beyond a reasonable doubt:
 
 
 [1]
 That each defendant, for the time period alleged in the indictment, travelled in interstate commerce;
 
 
 [2]
 That the travel was done with the specific intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment, carrying on and facilitation of a business enterprise involving marijuana. A "business enterprise" is a continuous course of criminal conduct, rather than sporadic, casual involvement in a proscribed activity. U.S. v. Donaway, 447 F.2d 940 (9th Cir.1971); and
 
 
 [3]
 That the defendant, following such travel, promoted, managed, established, carried on and facilitated, or attempted to promote manage, establish carry on and facilitate the business enterprise involving marijuana
 
 
 [6]
 The district court's entire mention of the Travel Act is set forth in the two following excerpts from its charge:
 Now, Count 6 of the indictment, which is found on page twelve, charges the Defendants Polowhichak [sic], Holshue, William Rawle and James Rawle, with traveling in interstate commerce to promote and carry on an unlawful activity. That is a business enterprise involving the marijuana, and with aiding and abetting in the commission of that crime. And that's in violation of a statute passed by Congress.
 ....
 In Count 7 of the indictment, it involves Defendant Wiesmann, Quinn and Prickett, are charged with with [sic] traveling in interstate commerce to carry on an unlawful activity. That's this business venture involving marijuana. And with aiding and abetting in the commission of that crime.
 
 
 [7]
 The jury was told:
 THE COURT: Now, Mr. Foreman, and members of the jury, when you go to the jury room to deliberate, you will have the original indictment with you. But because there are a number of--that you can go over and have with you. But because there are a number of different counts in the indictment, really ten, but I will be concerned with only eight, and because there are eight defendants on trial, I'm going to give for you, so if--so, it might help you with--as the attorneys argue the case, and as you try and keep up, I'm going to give each of you a copy of the indictment.
 Now, and I'm going to give it to you with this: Now, there's nothing in this indictment that's--this indictment is not evidence, remember that. All this indictment does is brought the defendants to trial. And just because there's a charge in this indictment, that doesn't mean one thing. There can be five hundred charges in this indictment, but the burden, you can only--you can't regard this indictment as proof of anything. It's just giving you, I just give you a copy of this. You can have it when you go to deliberate, so you can keep up with what's going on.
 It's not evidence in any way, not one bit of evidence. The Government has to prove, beyond a reasonable doubt, every fact that they charge, everything alledged [sic].
 So, I'm just giving you this indictment solely so when I talk to you about Count 1, you can look at Count 1, when we got eight counts or nine counts that we are going to be talking about. We got eight different defendants, some of them indicted in different counts. I think it will help you follow my charge and follow the arguments of counsel as they argue about different persons, and about different things.
 
 
 [8]
 We cannot agree with the thesis of the dissent that a general admonition that crimes must be committed willfully somehow supplies this deficiency. Scattering the essential elements of a crime throughout a 105-page jury charge cannot possibly inform a lay jury of the prerequisites to conviction. To divorce the requisite mens rea from the other essential elements of the Travel Act is to attenuate the importance of this element, especially here when intent was the determining factor of guilt or innocence. The jury must have a coherent, comprehensive understanding of that which it must find in order to convict, especially given the increased risk of confusion attending a multi-count, multi-party prosecution
 
 
 [9]
 Taylor held that the refusal to give a presumption of innocence charge denied the defendant due process of law. There, the court rejected the suggestion that defense counsel's argument could fill the gap:
 The Commonwealth also contends that no additional instructions were required, because defense counsel argued the presumption of innocence in both his opening and closing statements. But arguments of counsel cannot substitute for instructions by the court. United States v. Nelson, 498 F.2d 1247 (CA5 1974). Petitioner's right to have the jury deliberate solely on the basis of the evidence cannot be permitted to hinge upon a hope that defense counsel will be a more effective advocate for that proposition than the prosecutor will be in implying that extraneous circumstances may be considered. It was the duty of the court to safeguard petitioner's rights, a duty only it could have performed reliably. See Estelle v. Williams, 425 U.S. at 503, 48 L.Ed.2d 126, 96 S.Ct. 1691 [at 1692 (1976) ].
 436 U.S. at 488-89, 98 S.Ct. at 1936-37. (footnote omitted)
 
 
 [10]
 In the discussion of plain error, the dissent suggests that the jury was fully cognizant of the issue it must decide because of the introductory remarks of the district court prior to the opening statements of counsel and the taking of evidence. We have no doubt that such remarks may have served a useful purpose in providing guidance to the jury as it was about to hear a multi-count, multi-party, complex prosecution. In no way, however, may the remarks be deemed corrective of a deficient instruction. Fed.Crim.R. 30, after providing for written requests for instructions from the parties and requiring the court to rule on such requests prior to counsel's arguments to the jury, states that "the court shall instruct the jury after arguments are completed." We think that the collective wisdom of the Rules Committee, the Supreme Court of the United States and the Congress means that we must look to what the jury is told after the evidence is closed and counsel have argued to determine if the jury was properly instructed
 
 
 [1]
 The majority refers ante at 417 n. 8 to "a 105-page jury charge," a catch-all that includes not only the district court's instructions (thirty-two pages), but the supplementary instructions delivered after considering the objections and arguments of counsel (seven pages) and the supplementary instructions delivered in response to the questions of the deliberating jury (estimated by the majority at sixty-six pages). Whatever the length of the district court's comments, the point remains that this court must analyze individual passages with reference to the structure of the entire charge. Here that structure underscored the state of mind necessary to support a criminal conviction. Contrary to the suggestion of the majority, that information was not scattered throughout the instructions; it was discussed coherently on the thirteeenth and fourteenth pages of the thirty-two page original charge
 
 
 [2]
 Citing Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), the majority suggests that we may not go beyond the trial court's instructions in deciding whether the jury recognized that 18 U.S.C. Sec. 1952(a)(3) includes an element of specific intent. It is worth noting that the Supreme Court in Taylor did consider the arguments of counsel in deciding whether an abbreviated trial court instruction was adequate. See 436 U.S. at 486-88, 98 S.Ct. at 1935-36. In that case, unlike here, the closing arguments posed a significant risk of misleading the jury. Furthermore, this case differs from Taylor in two other respects. First, the defendant in Taylor raised a specific, contemporaneous objection to the trial court's contested instruction. See 436 U.S. at 482 n. 10, 98 S.Ct. at 1933 n. 10. Second, the error in Taylor --failure to charge the jury on the presumption of innocence--involved the question of how the jury should think about all aspects of the case and indeed a defendant's most basic guarantee. This case more closely resembles Henderson v. Kibbe, 431 U.S. 145, 153-54, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977), in which the Supreme Court relied upon the distribution of the indictment and the arguments of counsel in concluding that the jurors had been informed of all of the essential elements in the case. Henderson v. Kibbe is, to be sure, a collateral proceeding rather than a direct review, but the principles of attorney objection and the relevant sources for determining the probable influence on the verdict are the same in either situation. See United States v. Park, 421 U.S. 658, 674-76 and n. 16, 95 S.Ct. 1903, 1912-14 and n. 16, 44 L.Ed.2d 489 (1975)