836 F.2d 548
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph Leon WRIGHT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Richard DENNIS, Defendant-Appellant.
 Nos. 87-5530, 87-5538.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 6, 1987.
Decided Dec. 28, 1987.
 
 Bryan Edward Lessley (Smith, Patterson, Follin, Curtis, James & Harkavy on brief), Patrick Bruce Kirwan (Meals, Kirwan, Goger, Winter & Parks, P.C., Charles A. Lloyd, Carrington & Lloyd on brief) for appellant.
 David B. Smith, Assistant United States Attorney (Robert H. Edmunds, Jr., United States Attorney, Beck M. Strickland, CLA, Paralegal Specialist on Brief) for appellee.
 Before DONALD RUSSELL and JAMES DICKSON PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Ralph Leon Wright and Larry Richard Dennis challenge their convictions following a jury trial on drug related charges. They raise two claims on appeal. First, that the district court misapplied Fed.R.Evid. 704 in restricting cross-examination of a key government witness. Second, that they were prejudiced by the district court's supplemental jury charge. We reject both of these claims and affirm.
 
 I.
 
 2
 The charges against Wright and Dennis arose out of a cocaine distribution scheme involving James Quinones, Stephen Murray, and Deborah Murray McDowell. These latter three met in late 1985 and shortly thereafter, Quinones and Murray began making trips to Florida to purchase cocaine. After one of these trips, Quinones and McDowell traveled to Virginia to sell cocaine to an acquaintance of theirs. During this trip, they were introduced to Wright, who they in turn introduced to cocaine. Wright soon began purchasing the drug from Quinones at a negotiated price of $1,400 per ounce. Eventually Wright became quite friendly with Quinones and McDowell and visited Quinone's residence to "party" with cocaine along with Quinones and McDowell.
 
 
 3
 While Quinones was in the hospital in September of 1986, Murray notified him that he was planning a trip to Florida with McDowell and Wright to purchase more cocaine. Quinones told Murray to wait until he could accompany them because they did not have the contacts necessary to make the purchase. After Quinones was released, he, McDowell and Wright made the trip to Florida and purchased a large quantity of cocaine. Quinones paid Wright $400 for driving. Upon their return, Wright purchased some cocaine from Quinones.
 
 
 4
 In October 1986, Quinones and Wright made another trip to Florida. Quinones again paid Wright $400 for driving and Wright again purchased some cocaine upon their return. Quinones planned another trip for the beginning of November, but was short of cash for the purchase. He approached Wright about the possibility of Wright making up the shortfall, but nothing was concluded. This last trip was never made as Quinones was arrested a short time later.
 
 
 5
 Larry Dennis enters this case through his relationship with Murray. The two had known each other for several years and Dennis apparently was a customer of Murray's. Murray had mentioned Dennis's name to Quinones in relation to a possible cocaine deal and, in late October 1986, Dennis came to Quinones's residence to buy some cocaine. Dennis also became involved in dealing cocaine that he got from Murray. On one occasion when one of his customers did not pay, Dennis filed a report with the Guilford County Sheriff's Office charging the customer with stealing money from Dennis. Dennis was arrested in December of 1986.
 
 
 6
 A grand jury in the Middle District of North Carolina charged Wright and Dennis in a multi-count indictment that also named several other defendants, including Quinones, Murray, and McDowell. Count one charged Wright and Dennis, along with Quinones, Murray, McDowell, and two others, with conspiring to unlawfully possess with intent to distribute and to distribute cocaine, in violation of federal narcotics laws. Wright was charged in count nine of the indictment with the unlawful distribution of cocaine. Dennis was named in two additional counts as well. Count six charged him with cocaine distribution and count eight charged him with possession of cocaine with intent to distribute. Wright and Dennis were convicted on count one. Dennis was also convicted on count six.
 
 
 7
 This appeal followed.
 
 II.
 
 8
 Wright and Dennis first contend that the district court improperly restricted their cross-examination of a key government witness. Wright's counsel attempted to elicit from James Quinones answers to the questions: "Who was in this cocaine conspiracy or this partnership for criminal purposes?" and "Was there ever any meeting of the mind--any agreement, tacit or otherwise, with Leon Wright?" The court sustained government objections to both questions, ruling that the answers to these questions were for the jury to determine. On voir dire, Quinones named Murray and McDowell as his co-conspirators and denied that he ever had any agreement with Wright or Dennis.
 
 
 9
 Rule 704 provides that: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The rule is not an affirmative rule of admissibility. Thus, whether testimony is "otherwise admissible" must be determined by reference to the other rules of evidence. The admissibility of lay witness testimony in the form of an opinion or inference is governed by Fed.R.Evid. 701. Under this rule, such testimony is admissible if it is (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue. As Quinones is a central figure in the conspiracy at issue, there can be no question that the first prong of Rule 701's test is met. Thus, the narrow question before us is whether the district court abused its discretion in ruling that the proffered testimony would not be helpful to the jury. Considering the circumstances of this case, we cannot say that the court abused its discretion.
 
 
 10
 While Rule 704 allows the admission of testimony embracing an ultimate issue, Rules 701 and 704 have been applied to bar testimony laden with legal "terms of art" or couched in terms of a legal standard. Courts applying the rules in this manner have been concerned that such testimony (1) is not helpful to the jury, in that it simply tells the jury what result to reach, (2) risks confusing or misleading the jury, and (3) risks u urping the function of the trial court in that the jury may look to the witness testifying in terms of a legal standard for instruction on the applicable law, instead of the trial court. While these concerns are alleviated and testimony is admitted where the standard or term has a lay meaning that matches its legal meaning as used in a given case, the decision in the first instance is committed to the discretion of the district court. We believe that the first question at issue here, which required an understanding of a complex area of criminal law, raised the concerns that would justify exclusion by the district court. While the second question at issue presents a closer call, we believe that a sufficient risk of confusion or misunderstanding existed to bring its exclusion within the range of the district court's discretion.
 
 
 11
 In assessing the district court's discretion in this area, we do not focus solely on the form of the question. We also consider whether (1) it was possible to restate the question in a manner that avoids the risks justifying exclusion, (2) counsel in fact asked similar questions designed to elicit the same information, and (3) counsel had a fair opportunity to make the point to the jury that his questions were designed to present. In this case, Wright and Dennis were permitted extended cross-examination of Quinones on the underlying facts of the conspiracy, the import of which was to show that Wright and Dennis were not co-conspirators. Wright's counsel also was able to ask of, and elicit an answer from, Quinones on the question of the identity of his partners in the cocaine distribution operation. Quinones named only Murray and McDowell as his partners and explicitly testified that neither Wright nor Dennis were ever his partners. Finally, Wright's counsel asked Quinones a series of questions which probed the identity of those persons involved in starting and running the cocaine distribution operation. Quinones testified that the scheme was originally operated by him, Murray, and McDowell and later by just him and McDowell. In light of this extensive cross-examination that allowed counsel the opportunity to present the point to the jury offered by the disputed questions, while avoiding the risks inherent in those questions, we cannot find abuse of discretion in excluding the specific questions at issue.
 
 III
 
 12
 Wright and Dennis next contend that the court's supplemental jury charge was so unbalanced as to deny them a fair trial. Specifically, they contend that the supplemental charge was unfairly prejudicial because it failed to include an explanation of the principle of reasonable doubt, the government's burden of proof, the presumption of innocence, or at least an instruction to consider the original and supplemental charges as a whole.
 
 
 13
 Before the jury retired to deliberate, the district court instructed the jury on all of the elements involved in the case against Wright and Dennis. The court's original instructions contained a clear and detailed explanation of the reasonable doubt standard, the requirement that the government prove its case beyond a reasonable doubt, and the presumption of innocence enjoyed by criminal defendants. The court also instructed the jury to consider the charge in its entirety and not to emphasize any of its particular parts. Some two hours after its deliberations began, the jury, via a note, requested that the court "define all elements of conspiracy with intent to distribute as it pertains to this case, particularly as it pertains to Count One of the indictment." The court discussed the request with counsel for the government and the defendants and proposed a supplemental instruction which addressed the elements of conspiracy to possess with intent to distribute, which was also included in count one of the indictment. All counsel agreed to the court's proposal. After giving the supplemental charge, the court gave counsel a chance to object. No objections were made.* The Supreme Court has stated, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). We do not believe that this is that rare case.
 
 
 14
 As was its obligation, the district court responded to the jury's manifestation of its confusion or need for clarification. Bollenbach v. United States, 326 U.S. 607, 612-13 (1946). After reading the supplemental charge, the court inquired as to whether it had answered the jury's question. The jury responded in the affirmative. The court also properly afforded counsel the opportunity to be heard before giving its supplemental charge, United States v. Polowichak, 783 F.2d 410, 413 (4th Cir.1986), as well as an opportunity to object to the charge. United States v. Lane, 708 F.2d 1394, 1397 (9th Cir.1983). Though the court did not repeat its detailed explanation of reasonable doubt, its supplemental charge did, as Wright and Dennis admit, repeatedly mention the necessity that the crimes charged be established beyond a reasonable doubt. Additionally, the court mentioned that the defendants' guilt depended upon the government's proof of the essential elements of the crimes charged in count one beyond a reasonable doubt. Though the court did not remind the jury of the presumption of innocence, we cannot say this omission tipped the balance of the supplemental charge, considering it was given in response to a specific, neutral request by the jury. In short, while it might be desirable for a district court when giving a supplemental charge to at least remind the jury to consider all instructions as a whole, we cannot say that, under the circumstances of this case, the district court's supplemental jury charge was so unbalanced as to deny Wright and Dennis a fair trial. We therefore affirm.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Though it is clear that counsel for the defendants did not object to the charge when provided an opportunity to do so by the court after the charge was given, the defendants contend that counsel for Dennis had earlier requested that the court re-read its entire charge. As noted above, the court notified all counsel of the jury's request and discussed its proposed supplemental charge. The following exchange took place during this discussion:
 THE COURT: Gentlemen, as I explained to you in chambers a minute ago, the jury had a question for us at the time they took their lunch recess. When they returned, they gave it to the Clerk and the Clerk has given it to me.
 The question is: "Define all elements of conspiracy with intent to distribute as it pertains to the case, particularly as it pertains to Count One of the indictment."
 Now of course Count One of the indictment alleges not only the conspiracy to possess with intent to distribute but to distribute. They didn't put that in but I assume that's what they want.
 Are you in agreement?
 MR. SMITH: Judge, I think so.
 MR. LLOYD [Counsel for Wright]: Yes, Your Honor, I do.
 MR. WILLIAMS [Counsel for Dennis]: Yes, Your Honor. I feel that the whole instruction ought to be given.
 Given the context and content of the discussion, the request by Dennis's counsel clearly was not a request that the court re-read its entire jury instruction or include those elements whose omission is now claimed as error. Counsel was simply agreeing with the court's proposal that its supplemental charge encompass all of the elements included in count one.