983 F.2d 1059
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne THOMAS, a/k/a Eugene Gregory, Defendant-Appellant.
 No. 92-5188.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: January 7, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore.
 Magdalena Alboronoz Bell, KUPFERBERG & BERNSTEIN, for Appellant.
 Stephen Scott Zimmerman, Assistant United States Attorney, for Appellee.
 Steven D. Kupferberg, KUPFERBERG & BERNSTEIN, for Appellant.
 Richard D. Bennett, United States Attorney, for Appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL and WILKINSON, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Wayne Thomas appeals from his conviction for possession with intent to distribute cocaine, conspiracy to distribute cocaine, and possession of a firearm in connection to a drug trafficking crime. Because we find no error in his convictions, we affirm.
 
 I.
 
 2
 On May 7, 1991, Thomas drove to the Red Roof Inn in Oxen Hill, Maryland, to visit Sydney Eleanor Burch. At that time, agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) and the Drug Enforcement Administration (DEA) were questioning and searching various individuals suspected of cocaine dealing at the motel. The officers observed Thomas arrive in his black BMW and ascend a flight of stairs to the floor on which the searches were occurring. A confidential informant on the scene had identified the driver of the black BMW as a known drug dealer.
 
 
 3
 Special Agent Virginia O'Brien followed Thomas from the parking lot to Burch's room. When Thomas arrived at the room, he knocked on the door and Burch answered. At that time, O'Brien identified herself to Thomas and asked Burch to step through the door.
 
 
 4
 Also at that time, Special Agent Gerald Crispino approached Thomas. Crispino identified himself to Thomas as a federal agent and asked him if he had a car. Thomas identified the black BMW. Crispino asked Thomas if there were any weapons or drugs on his person or in the car. Thomas said there were not. At this point, Crispino asked Thomas if he could search his car and his person. Thomas consented and handed his keys to Crispino. A search of Thomas' person revealed nothing. Thomas accompanied O'Brien and Crispino to the black BMW, where a search of the car revealed a 9mm handgun with an obliterated serial number, a substance later determined to be crack cocaine, and $4000 in cash. At that time Crispino handcuffed Thomas and placed him under arrest.
 
 
 5
 Thomas' version of the events at the motel was different. Thomas testified at the suppression hearing that when he arrived at the room, Crispino started frisking him without his consent. In doing so, Crispino allegedly took Thomas' car keys, and without his consent, proceeded to search his car. Thomas also testified that Crispino and O'Brien ordered him to sit on the curb while they searched his car.
 
 
 6
 At the same time Thomas' car was searched, Special Agent Michael Bouchard obtained written consent from Burch to search her hotel room. Several special agents conducted the search and discovered a bag containing 82 ziplock bags, each containing a white powdery substance, which was later tested and found to be cocaine. The search also revealed a utility knife with cocaine base residue, a small amount of cocaine base, and a large number of empty ziplock bags.
 
 
 7
 After the search, Burch signed a written waiver of her Miranda rights and gave a written statement to Special Agent Gary Blanch in which she stated that the drugs in the room belonged to Thomas. Burch was placed under arrest.
 
 
 8
 On September 16, 1991, Thomas was tried on a five-count indictment by a jury in front of Judge Frederic Smalkin.[1] Before trial, a suppression hearing was held, where Thomas argued two motions. First, Thomas argued that the government should be compelled to produce the names and addresses of the individuals present at the Red Roof Inn during his arrest, and second, Thomas argued that the fruits of the search of his car should be suppressed because of lack of consent. The district court denied both motions.
 
 
 9
 At trial, the government introduced the evidence obtained during the search of Thomas' car against him. In addition, in exchange for a plea agreement, Burch testified that cocaine found in her room was actually Thomas', and that Thomas was a drug dealer.
 
 
 10
 On September 20, 1991, the jury returned a guilty verdict on every count on which Thomas was charged. On March 4, 1991, the district court sentenced Thomas to two hundred forty (240) months on counts one through four, and sixty (60) months on count five, to be served consecutively. Thomas appeals his convictions.
 
 II.
 
 11
 Thomas argues that the district court erred, under Brady v. Maryland, 373 U.S. 83 (1963), in denying his motion to compel the United States to disclose the identities of the individuals present on the balcony at the motel when Thomas was searched and arrested. In an attempt to present corroborating evidence on the issue of consent to the search of his car, Thomas had moved to compel production of the names and addresses of those individuals who the ATF and DEA agents were searching on the balcony at the time he arrived at the Red Roof Inn.
 
 
 12
 At the suppression hearing, Thomas rested on his alleged lack of consent to the search as his defense. He argued that the search of his car was performed without his consent and without probable cause, and therefore violated the Fourth Amendment. The United States countered with the testimony of the agents involved in the arrests. The district court concluded that the issue of consent was "a straight credibility call," and found that the testimony did not "say to [him] that the consent was involuntary or coerced." The district court denied Thomas' motion to suppress, and also denied his motion to compel, stating that the government had no obligation to attempt to locate and/or interview every possible witness.
 
 
 13
 Thomas contends that it was error for the district court to deny his motion to compel because the individuals present on the balcony at the Red Roof Inn during his arrest might be able to shed light on the events surrounding the obtaining of Thomas' consent. Because Thomas bases his challenge on Brady, we are required to review the district court's denial of his motion to compel de novo. United States v. Marashi, 913 F.2d 724, 731 (9th Cir. 1990).
 
 
 14
 In Brady, the Supreme Court held that the suppression of evidence "favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. Under Brady, a defendant must prove three elements to establish a due process violation: (1) that the prosecution withheld or suppressed evidence; (2) that the evidence is favorable; and (3) that the evidence is material to the defense. Moore v. Illinois, 408 U.S. 786, 794-95 (1972). "Evidence is 'material' when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " Jean v. Rice, 945 F.2d 82, 87 (4th Cir. 1991) (quoting United States v. Bagley, 473 U.S 667, 682 (1985)). "Impeachment evidence as well as exculpatory evidence ... falls within the principles of Brady." Id. at 87 n.9 (citing Giglio v. United States, 405 U.S. 150, 154-55 (1972)). "There is no general constitutional right," however, "to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Polowichak, 783 F.2d 410, 414 (4th Cir. 1986).
 
 
 15
 The United States insists that it did not violate Brady because it "had absolutely no information in its possession that indicated that the individuals questioned at the Red Roof Inn during the time that the appellant was questioned possessed any evidence that might be favorable to the defendant." It argues, therefore, that because Brady does not "require the disclosure of evidence based only on utter speculation that the evidence may possibly contain or lead to information favorable to the defense," United States v. Agurs, 427 U.S. 97, 110-11 (1976); Polowichak, 783 F.2d at 414, the district court did not err in denying Thomas' motion to compel.
 
 
 16
 The argument that the two additional persons who were present on the third floor heard the discussion between Officer Crispino and Thomas and could testify to the circumstances under which Thomas was said to have consented to a search is incredible. Officer O'Brien testified at the suppression hearing that she was standing within five to six feet of Thomas and Crispino at the time Crispino allegedly took Thomas' car keys, and that she was unable to hear anything that was being said between the two. (J.A. at 166-67) In light of her testimony, it is impossible to believe that either individual standing twenty-five to thirty feet down the hall conversing with other officers would have been able to testify concerning what transpired between Crispino and Thomas.
 
 
 17
 Even if we were to accept the remote possibility that one of the individuals on the balcony had any information pertaining to the consent issue, it is obvious that Thomas himself made no effort to obtain their names. The district court noted at the suppression hearing that Thomas could "do investigations as well. You can send an investigator to Red Roof Inn to find out who was registered there. These things are not solely known to the government." (J.A. at 123) Moreover, ATF Agent Michael Bouchard testified at the suppression hearing that Alice Williams and Alvin Bennett were the subjects of the surveillance at the Red Roof Inn on that day, and that Williams was a registered guest at the motel on the third floor. (J.A. at 129-30) He also gave the address of Alice Williams, (J.A. at 129), but had no knowledge of Bennett's address. An investigation of the guests registered on the third floor of the Red Roof Inn by Thomas would have at least revealed the name of the two individuals relevant to Thomas' inquiry. Had the motel been less than forthcoming with that information, it was certainly within the power of the district court to issue a subpoena to compel production of the register, and certainly had the names been discovered, the district court could have issued subpoenas to the witnesses to compel their presence, as the district court contemplated after the suppression hearing. (J.A. at 204) In light of all these circumstances, we find that the district court did not err in denying Thomas's Brady claim.
 
 III.
 
 18
 Thomas also argues that the district court erred in failing to instruct the jury that cocaine base contained the hydroxyl radical. Specifically, Thomas argues that because the government's expert witness admitted that he did not test for the presence of the hydroxyl radical in the substance obtained from Thomas' car, the government failed to establish that the substance was cocaine base, for the purposes of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. We review the question of whether the district court gave proper instructions to the jury de novo. United States v. Dove, 916 F.2d 41, 45 (2d Cir. 1990).
 
 
 19
 Thomas bases his argument on the case of United States v. Brown, 859 F.2d 974, 975-76 (D.C. Cir. 1988), in which the court defined cocaine base as "any form of cocaine with the hydroxyl radical." In United States v. Pinto, 905 F.2d 47, 49 (4th Cir. 1990), however, the Fourth Circuit held that the term cocaine base, as used in the Sentencing Guidelines, included what is commonly known as crack, the substance found in Thomas' car. In light of this case, it does not appear that the government was required to prove that the substance in question contained the hydroxyl radical. The district court's instruction[2] properly allowed the jury to conclude, based on the evidence presented-including the testimony of Burch that Thomas possessed crack cocaine-that the substance was cocaine base within the meaning of the statute. See 21 U.S.C. §§ 841(a)(1), (b). Therefore, we find no error in the district court's decision not to use Thomas' proposed jury instruction.
 
 IV.
 
 20
 Because we conclude that Thomas' arguments are without merit and do not require reversal, we affirm his convictions.
 
 AFFIRMED
 
 
 [1]
 Count One of the indictment charged Thomas with possession of 50 grams or more of cocaine base with intent to distribute. Count Two charged Thomas with possession with intent to distribute cocaine. Count Three charged Thomas with conspiracy to possess with intent to distribute 50 grams or more of cocaine base. Count Four charged Thomas with conspiracy to possess with intent to distribute cocaine. Count Five charged Thomas with using and carrying a firearm in relation to a drug trafficking crime
 
 
 [2]
 The district court instructed the jury that "it is up to [them] to decide ... whether [the substances in question] are cocaine or cocaine base."