972 F.2d 343
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Paul Alexander SIMMONS, Defendant-Appellant.
 No. 91-5806.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 8, 1992
Decided: August 17, 1992
 
 ARGUED: William Thomas Toal, JOHNSON, TOAL & BATTISTE, P.A., Columbia, South Carolina, for Appellant. John Steven Simmons, Assistant United States Attorney, Columbia, South Carolina, for Appellee. ON BRIEF: E. Bart Daniel, United States Attorney, Mark C. Moore, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 Before HALL and HAMILTON, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Paul Alexander Simmons brings this appeal challenging his jury trial conviction of attempted possession of cocaine in violation of 21 U.S.C. § 846 (1988), and the two-level increase of the offense level for obstruction of justice. Finding no reversible error, we affirm.
 
 I.
 
 2
 In August 1990, defendant Simmons contacted Tommy Jamison, who was then working as an informant for the Drug Enforcement Administration, seeking his assistance to find a supplier for cocaine. Jamison notified the drug enforcement authorities. With Jamison's consent on August 21, 1990, enforcement personnel monitored a telephone call from Jamison to Simmons in which Simmons said he wanted to "get re-established" and desired to acquire a kilogram of cocaine. Pursuant to Simmons' request, Jamison went to Simmons' office to discuss plans. Jamison wore a recording device. At the meeting, they discussed the planned purchase of a kilogram of cocaine the following day for $26,000.00. In a monitored telephone conversation the following day between Jamison and Simmons, they made plans to consummate the deal at a Days Inn Motel that evening. About seven o'clock that evening, Jamison telephoned Simmons to advise him the supplier was waiting at the motel in a specified room. Simmons soon appeared at that room and was introduced to a Drug Enforcement Agent (DEA) as the supplier. They discussed payment terms and Simmons observed and sampled the product. Simmons left the room to move his car closer to the room to pick up the cocaine. When he returned to the room, he was arrested. Questioned immediately following his arrest, Simmons admitted he tried to obtain the cocaine. He said that his poor financial position motivated him to try to make some quick money. Almost immediately after the incident in the motel, Jamison gave the DEA Agent a signed statement of the events as they had developed, conforming to the recorded telephone and recorded face-to-face conversations between Jamison and Simmons as well as the events at the motel room.
 
 
 3
 A few days later, after discussions with Simmons, and in an effort to assist Simmons, Jamison told law enforcement officers that on August 19th, 1990, Simmons was aware of the attempted "set-up" or "sting," and that he and Simmons had made tapes of their discussions to prove Simmons' prior knowledge of the "sting"; that Simmons had told him to tell the officers Simmons was interested in buying cocaine from a dealer from whom Jamison had earlier purchased "crack" cocaine; that Simmons allowed himself to be used because that dealer had threatened Jamison's safety.
 
 
 4
 On September 11, 1990, Jamison appeared at the United States Attorney's Office pursuant to a Grand Jury subpoena. He then told the Assistant United States Attorney and DEA Agent that Simmons did not intend to acquire cocaine and denied the truthfulness of the statement he had given following Simmons' arrest. He was informed he could be prosecuted for perjury if he lied before the Grand Jury. When, in response to a question from Jamison, he was told he could get five years for perjury, he replied he would tell the truth to the Grand Jury. Before sending Jamison before the Grand Jury, the detective interviewed Jamison on tape. He responded as he had in the signed statement given to the DEA Agent immediately following the events in the motel. In that taped statement, he said that Simmons had no prior knowledge of the "sting" before Simmons' arrest on August 23, 1990; that he and Simmons developed this story to protect Simmons'; and that the tapes which he and Simmons purportedly made on August 19, 22, and 23 were, in fact, made August 25 and 26, which was after Simmons' arrest. He then testified before the Grand Jury to substantially the same facts.
 
 
 5
 Jamison thereafter obtained counsel and advised his counsel he had been coerced by the Assistant United States Attorney, the detective and Special Agents into testifying falsely before the Grand Jury and that he had lied before the Grand Jury. At trial of Simmons, Jamison testified law enforcement officials coerced him into testifying falsely before the Grand Jury, and restated that Simmons knew of the "sting" prior to the incident at the motel and that defendant did not intend to acquire a kilogram of cocaine. Simmons testified in substantially the same manner. Following the week long trial, the jury found Simmons guilty as charged. At Simmons' sentencing, Jamison testified that he committed perjury at defendant's trial and that they created the defense tapes after the events at the Days Inn Motel in an attempt to obstruct defendant's trial. The Court found that Simmons, in manufacturing the tapes with Jamison, obstructed justice and imposed a two level increase to the offense level at sentencing. Jamison entered a guilty plea to making a false declaration and was duly sentenced.
 
 II.
 
 6
 Simmons asserts the trial court erred in admitting as substantive evidence Jamison's statement given to the DEA Agent immediately following the arrest in the motel room, and his testimony before the Grand Jury* under Rule 803(24) of the Federal Rules of Evidence. That Rule provides:
 
 
 7
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:*****
 
 
 8
 (24) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant. Fed. R. Evid. 803(24).
 
 
 9
 Jamison was present and testified. He was extensively examined and cross-examined. The trial judge made a determination from all of the facts and circumstances that the statement and Grand Jury testimony met the requirements of the Rule and each had guarantees of trustworthiness. The statement was given and signed immediately following the arrest of Simmons. It was corroborated by the sworn Grand Jury testimony and the tape recorded statement given by Jamison to the DEA Agents immediately prior to his appearance before the Grand Jury. It was also corroborated by the recorded telephone and face-to-face conversations between Jamison and Simmons. Such ruling was in accord with California v. Green, 399 U.S. 149, 158 (1970); United States v. Murphy, 696 F.2d 282, 294 (4th Cir. 1982), cert. denied sub nom. Waddell v. United States, 461 U.S. 945 (1983); United States v. Walker, 696 F.2d 277, 280 (4th Cir. 1982) (citations omitted), cert. denied sub nom. Balshor v. United States, 464 U.S. 891 (1983). See also United States v. Renville, 779 F.2d 430 (8th Cir. 1985); United States v. Williams, 573 F.2d 284 (5th Cir. 1978).
 
 
 10
 The district court's ruling on whether to admit or exclude evidence may only be overturned for an abuse of discretion. United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991); United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir. 1990), cert. denied, U.S., 111 S. Ct. 955 (1991). Here, any error in admitting the signed statement was harmless.
 
 
 11
 Simmons also complains of the Court's action in allowing the jurors to take notes made by them during the trial into the jury room during deliberations. The decision to allow the jury to take notes and use them during deliberations is within the discretion of the trial court, and absent an abuse of discretion, will not be disturbed. United States v. Polowichak, 783 F.2d 410, 413 (4th Cir. 1986); United States v. Oppon, 863 F.2d 141, 148 (1st Cir. 1988). Where jurors are permitted to take notes, they should be instructed that their notes are not evidence and should not take precedence over the juror's independent recollection of the evidence. While no such charge was requested or given, the failure to give such instruction under the facts of this case was not plain error. See Polowichak, 783 F.2d at 413.
 
 
 12
 Simmons also complains of the Court's refusal to admit in evidence during the presentation of the prosecution's case-in-chief, tapes made by Jamison and Simmons in their attempt to show Simmons was aware of the "sting" operation prior to his arrest. These tapes were admitted when Simmons presented his evidence in defense. Such was not an abuse of the trial judge's discretion.
 
 
 13
 Likewise, Simmons asserts that the district court erred in increasing the offense by two levels because of his alleged willfulness in obstructing justice. The Court found from the evidence that Simmons participated in the manufacture of the tapes of August 25 and 26 and in having Jamison testify falsely. As a result thereof, he granted the increased offense level. Such determination by the district court was not clearly erroneous and is affirmed. Mark, 943 F.2d at 450.
 
 
 14
 We have considered the other issues raised by the defendant and find them to be without merit. Finding no reversible error in the rulings of the district court, the judgment is affirmed.
 
 AFFIRMED
 
 
 *
 Jamison also complains that a statement of the U. S. Attorney in the transcript of the Grand Jury testimony was admitted in evidence. The statement could not have been prejudicial, and was not error