UNITED STATES of America, Appellee,

v.

Murdock HEAD (3 Cases), Appellant.

Nos. 79–5293, 5303 and 6727.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 13, 1980.

Decided Feb. 9, 1981.

Rehearing Denied April 16, 1981.

Frank W. Dunham, Brian P. Gettings, Washington, D. C. (Wallace H. Kleindienst, Arlington, Va., William L. Jacobson, Third Year Law Student, Leonard, Cohen, Gettings & Sher, Arlington, Va., on brief), for appellant.

David B. Smith, Dept. of Justice, Washington, D. C., Theodore S. Greenberg, Joseph A. Fisher, III, Asst. U. S. Attys., Alexandria, Va. (Justin W. Williams, U. S. Atty., David A. Schneider, Asst. U. S. Atty., Richmond, Va., on brief), for appellee.

Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and PHILLIPS, Circuit Judge.

WINTER, Circuit Judge:

Convicted by a jury of conspiracy to achieve three illegal objectives, Murdock Head appeals.* He asserts numerous errors in his trial. We agree that the district court committed reversible error when it instructed the jury that it could convict defendant if it found that he conspired to violate any one or more of the three criminal statutes but declined and failed to instruct the jury that it had to find an overt act in furtherance of that conspiracy committed within the applicable period of limitations. We therefore reverse his conviction and award him a new trial. We deal with his other contentions only to the extent that there is a reasonable likelihood that they will arise on retrial.

I.

Head is founder and Executive Director of Airlie Foundation, a tax exempt educational association which produces documentary films. Since its founding in the late 1950's, the Foundation has obtained substantial grants and contracts from the federal government. The Foundation subcontracted its film-making work to Raven's Hollow Limited, a federally taxable entity created by Head in 1963. Much of the federal money received by the Foundation was under the control of a House of Representatives Subcommittee chaired by Congressman Daniel Flood.

The indictment contained thirteen counts. Count one alleged a single conspiracy by Head and fifteen others with the object of committing three offenses: 1) the bribery of Congressman Flood and his aide, Steven Elko, in violation of 18 U.S.C. §§ 201(b) & (f); 2) the giving of a thing of value, i. e. a loan of $11,000 at advantageous rates and forbearance in collecting amounts due, to Jesse Hare, an Internal Revenue agent who performed an audit of the Foundation or related entities in 1969 and 1970, in violation of 18 U.S.C. § 201(f); and 3) the evasion of Raven's Hollow's federal income taxes in violation of 26 U.S.C. §§ 7201 and 7206. The jury returned a verdict of guilty on the conspiracy count and Head was sentenced to three years imprisonment.

The second count, alleging that Head paid a $1000 bribe to Flood in August, 1974, was severed from the remainder of the indictment and later dismissed on the motion of the government. Counts three through seven, relating to the loan to Jesse Hare, were dismissed by the district court follow-

---

* We deal with three consolidated appeals. No. 79 5293 is an appeal from the judgment entered on the verdict; No. 79–5303 is an appeal from the denial of a motion for a new trial; and No. 80–6727 is an appeal from the denial of a motion for new trial based upon newly discovered evidence.

ing presentation of the government's case. The district court apparently found either that there was no evidence of forbearance by Head or that forbearance was not a thing of value under 18 U.S.C. § 201(f). The remaining six counts dealt with the tax violations. Four were dismissed by the district court for insufficient evidence. The jury acquitted Head on the other two counts.

Other facts will be stated in conjunction with the contentions to which they relate.

## II.

### Failure to Instruct on Statute of Limitations

Count one, as we have said, alleged a conspiracy with three unlawful objects. In its charge to the jury, the district court stated:

> The Government . . . does not have to prove that Dr. Head conspired with anyone to . . . violate all of the three laws I have named, but they have to prove beyond a reasonable doubt . . . that he did wilfully and intentionally [conspire to] violate one of the three statutes. . . .

The jury was instructed only to return a general verdict of guilty on the conspiracy count. Head does not argue that the "one is enough" instruction itself was improper. He does contend, however, that, having been given the "one is enough" instruction, the jury could not validly convict him without adequate instructions with regard to each of the criminal objectives of the conspiracy. Head further contends that the district court's instructions regarding two of the objects of the conspiracy—the bribery of Flood and the giving of a thing of

value to Hare—were fatally defective because they failed to address the serious statute of limitations problems raised by the allegations of those object crimes.

 The government does not dispute the "general rule" that, in order to avoid the five-year statute of limitations for conspiracies,[1] it must prove an overt act in furtherance of the conspiracy committed within the limitations period. *See United States v. Davis*, 533 F.2d 921, 926 (5 Cir. 1976). Count one alleged twenty overt acts in furtherance of the conspiracy, only five of which occurred within five years of the indictment. Of those five acts, only three related to the Flood or Hare objects of the conspiracy.[2] In short, with regard to two of the three objects of the conspiracy, the indictment rested in large part on acts occurring without the limitations period. Under these circumstances, there can be no doubt that Head was entitled to an instruction requiring the jury to find an overt act committed within the limitations period before it could find him guilty. The government's only response is that Head failed to request a proper instruction and that any prejudice to Head is too remote to warrant reversal.

The first contention is meritless. The government itself requested the instruction and the defense did not object. After the district court rejected the proposed instruction, defense counsel twice requested the court to instruct the jury that an overt act must be found within the five-year period.[3] Again, after the jury returned a partial verdict acquitting Head on two tax charges, defense counsel repeated his request for the instruction. On each occasion, the district court denied the request.[4]

---

1. The limitations period applicable to a conspiracy to violate 18 U.S.C. §§ 201(b) or (f) is five years. *See* 18 U.S.C. § 3282. The period applicable to a conspiracy to violate 26 U.S.C. §§ 7201 or 7206 is six years. *See* 26 U.S.C. §§ 6531(3) and 6531(8). The difference is inconsequential in this case because Head does not contend that a statute of limitations instruction would have been necessary with regard to the Title 26 objectives.

2. Moreover, Head argues, and the government practically concedes, that the two overt acts relating to the Hare loan were not in furtherance of the conspiracy in any event.

3. The record indicates that even counsel for the government expressed bewilderment at the court's ruling.

4. The district court repeatedly expressed the view that "the jury has nothing to do with the statute of limitations."

The government argues that its proposed instruction was erroneous in two respects, both favorable to the defendant, and that the district court was under no obligation to give a requested instruction that misstates the law. *See United States v. L'Hoste*, 609 F.2d 796, 805 (5 Cir. 1980). Even if we were convinced that the instruction was inaccurate,[5] however, the government's argument would still fail. We cannot conclude, consistent with our adversary system of justice, that defense counsel must step forward to correct arguable government errors favorable to the defendant.

At oral argument and in a post-argument memorandum, the government belatedly asserts that Head's conviction should stand because "the likelihood that Head was prejudiced by the trial court's failure to give a statute of limitations charge is very slim." The government relies on an extensive list of cases from other circuits which purportedly stand for the principle that "an appellate tribunal must grapple with the often difficult question of how likely it is that such prejudice in fact occurred." Here, we are told, it is overwhelmingly likely either that the jury found that the conspiracy related to tax objects not barred by limitations or that the jury found an overt act in furtherance of the bribery objects within five years of the indictment. Despite the government's urging, we fail to perceive with reasonable certainty the basis for the jury's general verdict.[6]

We recognize that there is conflicting authority on this issue. Several circuits have upheld convictions for multiple-object conspiracies even though one or more of the alleged objects failed properly to define a crime. *See, e. g., United States v. Papadakis*, 510 F.2d 287, 297 (2 Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. Tanner*, 471 F.2d 128, 140 (7 Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). Other circuits have rejected the rule. *See, e. g., United States v. Carman*, 577 F.2d 556 (9 Cir. 1978); *United States v. Baranski*, 484 F.2d 556, 560–61 (7 Cir. 1973).

We find the latter series of cases more persuasive. Many of the cases relied upon by the government fail to address the fact that a general jury verdict of guilty may leave a reviewing court uncertain as to which offense or offenses alleged in a multiple-object conspiracy were actually found by a jury. *See, e. g., United States v. Papadakis, supra.* The cases which acknowledge this problem seek to surmount it by asserting that the conviction of the defendant on a particular substantive count indicates that the jury found the defendant conspired to commit the same offense alleged as an object of conspiracy. In such cases courts have upheld conspiracy convictions even though one object of the conspiracy may have been improperly defined because, the opinions assert, the verdict of guilty on a validly-charged substantive

---

5. The government contends that a five-year period applies only to a conspiracy to violate the bribery laws while a six-year period would apply to a conspiracy with tax objects. *See* note 1, *supra.* While this may be true, we are not convinced that this difference would require the "hybrid" statute of limitations charge suggested by the government. In a multiple-object conspiracy where the object crimes bring into play differing statutes of limitations, the proper course may be to apply the rule of lenity in construing the statutes and apply the shorter limitations period to the entire conspiracy.

The government also contends that the jury need not have been instructed to find an overt act *alleged in the indictment* within the limitations period, but could have avoided the bar of limitations by finding unpled acts. We disagree. *See United States v. Davis*, 533 F.2d 921, 929 (5 Cir. 1976). The cases cited by the

government deal not with limitations but with the issue of variance between the indictment and proof at trial.

6. We would add that, from what little we do know of the jury's reasoning in this case, we find the probability of prejudice much more significant than the government suggests. The jury acquitted Head on the only substantive tax counts submitted to it. The likelihood that the jury found a tax object of the conspiracy, therefore, seems somewhat remote. The vast majority of the overt acts alleged with respect to the other two objects were beyond the limitations period. The general verdict provides no assurance that the jury, having found the commission of acts beyond the limitations period, even attempted to reach agreement regarding the more recent acts.

count shows that the jury did not ground a conspiracy conviction on an erroneously-defined object crime. *E. g., United States v. Dixon*, 536 F.2d 1388, 1401–02 (2 Cir. 1976).[7] These cases are inapposite here, however, because Head was acquitted of the only substantive counts submitted to the jury.

More significantly, we agree with the Ninth Circuit's view, expressed in *United States v. Carman*, 577 F.2d 556, 566–67 (1978), that *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), compels an appellate court to reverse where a general jury verdict renders it impossible to say whether a defendant was convicted under an erroneous or a valid view of the law. In *Stromberg* the jury returned a general verdict of guilty on a count which contained three clauses defining the crime. The jury was instructed that proof of any one of the three defined acts would be sufficient to convict. The Supreme Court declared:

> [I]t is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses . . . was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause. . . . [T]he necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.

283 U.S. at 368, 51 S.Ct. at 535. In *Yates v. United States*, 354 U.S. 298, 311–312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957), the Supreme Court applied the *Stromberg* doctrine in a conspiracy case raising the same issue that we now decide. In *Yates* several defendants were convicted under the Smith Act of conspiracy to advocate violent overthrow of the government and to organize a society for the purpose of such advocacy. Finding that prosecution of the "organizing" object of the conspiracy was barred by limitations, the Supreme Court applied the *Stromberg* rationale in reversing the conviction:

> [W]e have no way of knowing whether the overt act found by the jury was one which it believed to be in furtherance of the "advocacy" rather than the "organizing" objective of the alleged conspiracy. . . . In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.

354 U.S. at 311–12, 77 S.Ct. at 1073.

*Stromberg* and *Yates* compel reversal of Head's conviction. We simply have no way of knowing whether Head was convicted for an offense barred by limitations.[8] We decline to engage in speculation of this sort in determining guilt in a criminal case.

### III.

### *Other Issues*

What we have said is sufficient to decide that Head is entitled to a new trial. It also renders moot his appeal from the denial of his motion for a new trial based upon newly-discovered evidence. But we are constrained to address also other issues which are likely to arise on retrial.

### A. *Duplicity of Count One*

Head argues that the government's proof establishes three separate conspiracies rather than a single conspiracy with multiple objects. Viewing the evidence in the light most favorable to the government, we cannot agree. The evidence showed that

---

7. At this time, we need neither approve nor disapprove of the reasoning in these cases. We do note, however, that a verdict of guilty on a substantive offense does not necessarily show that the jury found a conspiracy to commit that same offense where other offenses are also alleged as objects of the conspiracy.

8. The parties cite contradictory newspaper articles, each purporting to divulge the true meaning behind the jury's general verdict. This sort of conflict graphically represents the quagmire the government invites us to enter in order to determine the "likelihood" that Head was prejudiced.

Head conspired with others to create a "slush fund" to be used in buying the influence of key members of Congress. The manner in which the fund was created resulted in tax violations which Head was obliged to conceal by buying Agent Hare's silence. Even if Hare's audit addressed tax years prior to the activities designed to create the "slush fund," the jury might still conclude that Hare's continued silence was necessary in order to prevent further IRS inquiries which might expose the scheme.

## B. *The District Court's Instructions to the Jury*

■ Head raises a variety of objections to the sufficiency of the jury's instructions, objecting first to the district court's reading of 18 U.S.C. § 201 to the jury rather than setting forth the separate elements of the offense as suggested in an instruction proposed by the government. We reiterate what we said in *United States v. Harris,* 346 F.2d 182, 184 (4 Cir. 1965):

[T]he submission should outline to the jury the elements of the crime. That was not done here. The omission was not supplied by the reading of the statute to the jury. In every criminal prosecution, we have heretofore insisted, an exposition of the constituents of the offense is mandatory and indispensable.

On retrial, Head will be entitled to an exposition of the elements of § 201 and the other crimes with which he is charged.

■ Head next complains that his proposed instructions regarding campaign contributions were erroneously refused. Defendant's proposed instructions (nos. 9 & 38), however, may have misled the jury into believing anything denominated a "campaign contribution" could not constitute a bribe. Upon retrial, Head would be entitled, upon proper request, to an instruction accurately stating the distinction between lawful "goodwill expenditures" and bribes made with "criminal intent that the benefit be received by the official as a *quid pro quo* for some official act, pattern of acts, or agreement to act favorably to the donor when necessary." *United States v. Arthur,* 544 F.2d 730, 735 (4 Cir. 1976).

■ Head also objects to the refusal of his instruction that a reasonable "appearance fee" paid to a congressman for attending a banquet would not constitute a "thing of value" under § 201. The government's only response is that "it is obvious" from the evidence that the payment in question was not intended as an honorarium. Elko testified, however, that he gave the money to Flood for the purposes of attending a banquet and that Flood in fact attended. The evidence provides a clear basis for the instruction and it should have been given.

■ Head submitted an instruction stating that he could not be found guilty of tax evasion if he relied upon accountants to prepare tax returns and did nothing to obstruct the flow of information necessary to prepare those returns. An instruction reflecting at least the substance of Head's proposal should have been given. *See United States v. Mitchell,* 495 F.2d 285 (4 Cir. 1974).

Finally, Head complains that the district judge erroneously rejected his proposed instructions defining business expenses for income tax purposes. While it may have been preferable for the court to present to the jury the more complete explanation of the law contained in Head's proposed instructions, it does appear that the instructions actually given were more favorable than those to which Head was entitled.

## C. *Cross-Examination of Elko*

■ Head claims the district judge unduly restricted his cross-examination of Steven Elko. Throughout the trial defense counsel tried to show that Elko extorted contributions from Head. In that effort, counsel attempted to question Elko regarding his testimony before a congressional committee. In that testimony Elko had related a conversation in which Flood arguably instructed him to extort payments by using his "discretion" regarding government projects. Twice the district judge prohibited the inquiry, even though it addressed a crucial point of difference be-

tween Head's version of his dealings with Elko and Elko's story. While at the present time it is not necessary to label these rulings an abuse of discretion, we see no reason for restricting this area of inquiry upon retrial.

### D. IRS Code of Conduct

 Head claims that the Internal Revenue Manual on employee conduct was improperly admitted over his objection as to relevance. *United States v. Morlang*, 531 F.2d 183, 192 (4 Cir. 1975), upon which Head relies, found similar standards of conduct relevant in a case involving bribery of a federal official. To be admissible, the court held, such standards "must prescribe duties and modes of conduct as opposed to broad ethical and moral precepts." Here, the IRS standards specifically require agents "not to engage in any business or financial transaction with a taxpayer ... under circumstances which might reasonably be construed as influencing ... performance of governmental duties." We think the standards are relevant to show that the type of action Head sought to influence was "governed by a lawful requirement of the executive department under whose authority [Hare] was acting," 531 F.2d at 192, and that the manual was properly admitted into evidence.

### E. Hearsay Testimony

 Head contends that the testimony of IRS agent Fox was based substantially on hearsay statements. The record supports this claim. Rule 703 of the Federal Rules of Evidence, however, permits an expert witness such as Fox to give opinion testimony even though based on hearsay statements not in evidence. This rule has been applied in tax prosecutions on facts very similar to this case. *See United States v. Genser*, 582 F.2d 292 (3 Cir. 1978), *cert. denied*, 444 U.S. 928, 100 S.Ct. 269, 62

L.Ed.2d 185 (1979); *United States v. Williams*, 447 F.2d 1285 (5 Cir. 1971). The testimony is admissible where the expert opinion relies on the sort of material an expert might reasonably consider under the circumstances. *United States v. Genser, supra*. Here Fox relied primarily on his own conversations with Head's bookkeepers and with other IRS agents. Moreover, these individuals were themselves government witnesses available for cross-examination. It follows that the testimony of the IRS agent was admissible.

### IV.

### Sufficiency of the Evidence

 Head argues finally that there is no evidence that any overt act in furtherance of the bribery objects occurred within the limitations period. Even if this argument accurately reflected the facts in the record,[9] however, it would not provide a ground for reversal. If Head had been convicted of three separate conspiracies, this argument might justify a directed verdict of acquittal on any count not supported by sufficient evidence. *See Yates v. United States*, 354 U.S. 298, 327–31, 77 S.Ct. 1064, 1081, 1 L.Ed.2d 1356 (1957). However, since we find sufficient evidence to support the government theory that Head was involved in a single conspiracy with multiple objects, it is unnecessary for us to find an act within the limitations period in furtherance of each object. At least three acts arguably in furtherance of the overall conspiracy, *i. e.* two tax filings and the payment of $1000 to Elko, occurred within five years of the indictment. These provide evidence sufficient to overcome defendant's motion for a directed verdict of acquittal.

For these reasons, the judgment entered on the conviction is reversed and the case is

---

**9.** Three such acts were alleged in the indictment and supported by proof at trial. Head asserts, and the government apparently concedes, that the two acts related to the Hare object were not shown to be in furtherance of the conspiracy. While Head advances the

same argument with respect to the remaining act, related to the Flood-Elko bribery, the evidence supports a contrary inference when viewed in the light most favorable to the government.

remanded for a new trial consistent with this opinion.

Nos. 79–5293 and 79–5303: REVERSED AND REMANDED.

No. 80–6727: APPEAL DISMISSED.