UNITED STATES of America

v.

Vinodchandra MODI, etc., et al., Defendants.

No. 1:01CR00050.

United States District Court, W.D. Virginia, Abingdon Division.

March 15, 2002.

Rick A. Mountcastle and Ruth E. Plagenhoef, Assistant United States Attorneys, Abingdon, Virginia, for United States of America.

Wyatt B. Durrette, Jr., Durrette, Irvin & Bradshaw, PLC, Richmond, Virginia, for Defendant Vinod Modi.

John B. Russell, Jr., John B. Russell, Jr. & Associates, PLC, Midlothian, Virginia, for Defendant Kailas Modi.

## OPINION AND ORDER

JONES, District Judge.

The defendants in this health care criminal prosecution have moved to dismiss portions of the indictment against them. Alternatively, they move for a bill of particulars and in addition, request the court to strike the government's notices of other crimes, wrongs, or acts. For the reasons set forth in this opinion, the motions will be denied.

### I

The defendants, Vinod and Kailas Modi, are physicians charged in a 140–count indictment with racketeering and racketeering conspiracy, mail fraud and mail fraud conspiracy, money laundering conspiracy, federal health care program kickbacks, and illegal drug distribution.[1] The indictment charges that Kailas Modi operated her medical practice as a sole proprietorship called Miners Medical Clinic ("MMC"), located in Oakwood, Virginia. Vinod Modi, her husband, is alleged to have "associated with and/or practiced medicine at MMC" at various times.[2]

The defendants have filed joint motions seeking to dismiss certain charges alleged in the indictment. In particular, they request the court to dismiss the mail fraud counts and certain of the alleged racketeering acts, as well as the counts of the indictment charging the defendants with illegal drug distribution. They alternatively move for a bill of particulars. Finally, they object to the government's 404(b)[3] notices of its intent to introduce evidence at trial of other crimes, wrongs, or acts by the defendants. The objection is that the notices are insufficiently precise, and that some of the intended evidence is inadmissible.[4]

The motions were argued on February 28, 2002, and are ripe for decision. The issues presented will be considered seriatim.

---

1. *See* 18 U.S.C.A. § 1962(c) (West 2000); 18 U.S.C.A. § 1962(d) (West 2000); 18 U.S.C.A. § 1341 (West 2000); 18 U.S.C.A. § 371 (West 2000); 18 U.S.C.A. § 1956(h) (West 2000); 42 U.S.C.A. § 1320a–7b(b)(1)(B) (West Supp. 2001); 21 U.S.C.A. § 841 (West 1999 & Supp. 2001).

2. Indictment, intro., ¶ 2.

3. Fed.R.Evid. 404(b).

4. The defendants also moved to strike Count Seventy–Four of the indictment, but the government has agreed to a dismissal of that count, so that the defendants' motion is moot.

## II

The defendants first seek a dismissal of the mail fraud counts of the indictment—Counts Three through Seventy–Two—as insufficient as a matter of law.

Count Three charges a conspiracy to commit mail fraud, which conspiracy lasted from 1987 until the date of the indictment (July 25, 2001). The indictment charges that the defendants conspired to use the mails to execute a scheme to defraud the United States through the Black Lung Program ("BLP") and Medicare by means of false pretenses and representations. In particular, the indictment charges that:

C.V. MODI and K. MODI used and caused the use of K. MODI's BLP provider number on claims sent to the BLP to falsely and fraudulently obtain payment for medical care provided by V. MODI when V. MODI's medical license was revoked and/or he did not have an appropriate BLP provider number.

D.V. MODI and K. MODI sent and caused to be sent to the BLP and/or Medicare claims for medical treatments, including office visits, intravenous injections, supplies and materials for intravenous injections, aerosol treatments, the administration of antibiotics, and the administration of steroids for which there was no medical necessity and/or which were outside the bounds of medical practice.

E.V. MODI and K. MODI prepared and caused the preparation of records, including patient notes and claim forms, that contained false diagnoses and transmitted and caused the transmission of these claims to Medicare.

F.V. MODI and K. MODI knowingly took and received from the United States Postal Service, more than 500 checks that included more than $1,000,000 in payments obtained from the United States through the BLP and Medicare.[5]

Count Three further charges eighty-seven separate occasions when the defendants received Medicare payment checks from the mail, which checks included payments for fraudulent claims submitted to Medicare. Each of these overt acts to further the conspiracy is described by a date on which a particular check was received.

Counts Four through Seventy–Two allege substantive counts of mail fraud related to the conspiracy charged in Count Three. Each of the substantive counts corresponds to one of the overt acts of the mail fraud conspiracy.[6]

The defendants contend that these counts fail to contain enough specifics to insure that the grand jury considered the same allegations that the government will present at trial, as required by the Grand Jury Clause.[7] Moreover, the defendants argue that the lack of specificity denies them the fair opportunity to defend themselves, in violation of the Sixth Amendment.[8]

I find the indictment sufficient. It tracks the statutory language of the

5. Indictment, Count Three.

6. Certain of the overt acts are not charged as substantive counts, presumably because they lay outside of the five-year statute of limitations. See 18 U.S.C.A. § 3282 (West 2000).

7. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...." U.S. Const., amend. V. See Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.").

8. "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the

offenses charged.[9] A mail fraud indictment need not identify the intended victim,[10] nor set forth the exact mailing dates,[11] nor give the exact representations alleged to be inaccurate.[12] While there is clearly no bright line test for judging the sufficiency of an indictment, under the circumstances here, I find that the indictment is not constitutionally deficient. Under the defendants' view, in order to pass constitutional muster this indictment should have included the details of each false diagnosis given and procedure performed and the amount of money received by the defendants in each such case. Such detail "'is not and never has been required at the indictment stage ....'"[13]

Accordingly, I find that dismissal of these counts of the indictment is not warranted.

### III

▆ The defendants also move to dismiss Racketeering Acts 2 through 117 and 119 through 124 of Count One, Counts Three through Seventy–Two, and Counts Seventy–Five through One Hundred Thirty–Seven, all because the criminal statutes underlying those charges are unconstitutionally vague as applied to the defendants as physicians. They contend that since the indictment charges that the defendants illegally distributed ·controlled substances and committed mail fraud through their practice of medicine, and since the practice of medicine requires the exercise of professional judgment, it is impossible for them or any reasonable person to have received fair notice of what conduct is proscribed. Moreover, they argue that to prosecute them for such conduct subjects them to arbitrary enforcement, since no prosecutor can be expected to determine the bounds ·of proper medical practice. On both grounds, they argue, the criminal statutes, as applied to them, are unenforceable.[14]

▆ I disagree. For the reasons set forth in my opinion in *United States v. Sutherland*,[15] I find that 21 U.S.C.A. § 841 (West 1999 & Supp.2001), the statutory prohibition against the distribution of controlled substances, is not unconstitutionally vague when applied to a physician.[16] The applicable standard of proof under the statute requires that the physician dispense the controlled substances not for the treatment of a patient but for reasons outside the bounds of professional medical practice.[17] This mens rea, or state of mind

---

nature and cause of the accusation ...." U.S. Const., amend. VI.

9. "An indictment tracking the language of the statute is sufficient to charge a violation of [the conspiracy statute] [and] an indictment which tracks the statutory language is sufficient to charge mail fraud ...." *United States v. Gordon*, 780 F.2d 1165, 1171 (5th Cir. 1986).

10. *See United States v. Loayza*, 107 F.3d 257, 260–61 (4th Cir.1997).

11. *See United States v. Upton*, 856 F.Supp. 727, 738–40 (E.D.N.Y.1994).

12. *See id.*

13. *Loayza*, 107 F.3d at 261 (quoting *United States v. Arlen*, 947 F.2d 139, 145 n. 7 (5th Cir.1991)).

14. "It is settled that, as a matter of due process, a criminal statute that 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' or is so indefinite that 'it encourages arbitrary and erratic arrests and convictions,' is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (citations omitted).

15. Nos. 1:00CR00052, 1:00CR00093, 1:01CR00009, 2001 WL 497319 (W.D.Va. May 10, 2001).

16. *See id.* at *3.

17. *See United States v. Tran Trong Cuong*, 18 F.3d 1132, 1137 (4th Cir.1994).

requirement, overcomes any claimed constitutional deficiency.[18] Persons convicted after proof of the necessary mens rea "are not punished for violating an unknowable something."[19]

■ A similar analysis applies to the mail fraud counts. The defendants are charged with the intent to defraud, not the innocent but incorrect practice of medicine. Moreover, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications,' "[20]

For these reasons, I do not find the statutes unconstitutionally vague.

## IV

■ The defendants also seek a bill of particulars of the charges contained in the indictment. While not conceding their constitutional attack on the indictment, they request additional information in order to better prepare their defenses to the charges.[21] The decision to order a bill of particulars is committed to the sound discretion of the trial court.[22]

The government opposes the motion, and relies on its "open file" policy of discovery in the case to obviate the need for formal particulars.[23]

I recognize, as argued by the defendants, that the volume of discovery in a complex case may itself impede rather than assist the defense in its understanding of the government's case. Merely to be shown thousands of documents without any direction as to the significance of the various pieces of paper may not comport with fairness.[24]

■ In the present case, however, the defendants concede that they have been provided with charts or summaries prepared by the government's case agent identifying the patients at issue, the dates of services, the suspect treatments, and the amounts paid for those allegedly improper services.[25] Under these circumstances, I find that a bill of particulars is not required.

## V

. The defendants move to dismiss Racketeering Act 1 (Mail Fraud/Altered Lab Tests) of Count One of the indictment on the ground that the conduct alleged is legally unrelated to the other acts of racketeering charged. That portion of the indictment charges as follows:

18. *See Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (upholding criminal statute regulating protests at abortion clinics on ground, inter alia, that the statute contained scienter requirement).

19. *Screws v. United States,* 325 U.S. 91, 105, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

20. *Hill,* 530 U.S. at 733, 120 S.Ct. 2480 (quoting *United States v. Raines,* 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)).

21. A motion for a bill of particulars is permitted by the rules. *See* Fed.R.Crim.P. 7(f).

22. *See Will v. United States,* 389 U.S. 90, 98–99, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

23. *See United States v. Soc'y of Indep. Gasoline Marketers of Am.,* 624 F.2d 461, 466 (4th Cir.1979) (holding that it was not error to decline bill of particulars in the light of extensive voluntary disclosure by the government).

24. *See United States v. Bin Laden,* 92 F.Supp.2d 225, 234 (S.D.N.Y.2000) ("[S]ometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."); *United States v. Nachamie,* 91 F.Supp.2d 565, 571 (S.D.N.Y.2000) (requiring bill of particulars in Medicare fraud case where government had produced more than 200,000 pages of documents relating to 2000 Medicare claims, but had not provided any identification of the alleged false claims).

25. *See* Defs.' Mot. for Bill of Particulars at 2.

5. Between on or about August 12, 1987, and continuing until on or about January 17, 1988, V. MODI, as a principal and/or aider and abettor, for the purpose of executing and attempting to execute a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises from the BLP, Medicare, Medicaid, and/or health insurance providers, falsely and fraudulently altered serum amylase laboratory test results on approximately 49 separate occasions to fraudulently justify the admission of patients to [Buchanan General Hospital] and thereby allow V. MODI to submit claims for payment of medically unnecessary inpatient treatments and hospital visits.

6. As part of the scheme and artifice to defraud the MODIs used and caused the use of the United States Postal Service for the delivery of false and fraudulent claims totaling more than $19,000, in violation of Title 18, United States Code, Sections 2 and 1341.[26]

The other racketeering acts alleged in Count One involve defrauding the Black Lung Program and Medicare by submitting claims based on unnecessary medical services or falsified diagnoses,[27] money laundering of the fraud proceeds,[28] and dispensing controlled substances without a legitimate purpose and beyond the bounds of medical practice.[29]

Count One is based on the Racketeer Influenced and Corrupt Organizations Act,[30] which, among other things, prohibits the conduct of an enterprise's affairs "through a pattern of racketeering activity...."[31] Under the statute, a "pattern" requires at least two acts of racketeering activity within a ten-year period,[32] but it is otherwise undefined. The Supreme Court has construed a pattern under RICO to mean both a *relationship* between the acts, in terms of "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise ... interrelated by distinguishing characteristics and ... not isolated events," [33] and a *continuity* of the acts, which exists if the acts are a regular way of conducting business.[34] These criteria are highly abstract [35] and in practice "depend on the facts of each particular case." [36]

■ At least at this point prior to trial, I cannot find as a matter of law that this alleged conduct does not constitute a predicate act under Count One. The claim that Vinod Modi altered serum amylase laboratory tests shares commonalities with other racketeering acts such as the falsification of medical records by a physician and use of the mails to obtain payment for false medical claims. In addition, the government represents that it will show that most of the patients whose serum amylase tests were altered were patients of the alleged criminal enterprise, MMC, and

**26.** Indictment, Count One, ¶¶ 5–6.

**27.** *See id.* ¶¶ 7,8.

**28.** *See id.* ¶ 9.

**29.** *See id.* ¶¶ 11–15.

**30.** 18 U.S.C.A. §§ 1961–1968 (West 2000) ("RICO").

**31.** *Id.* § 1962(c).

**32.** *See id.* § 1961(5).

**33.** *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**34.** *See id.* at 243, 109 S.Ct. 2893.

**35.** *See id.* at 254–55, 109 S.Ct. 2893 (Scalia, J. concurring).

**36.** *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians,* 155 F.3d 500, 506 (4th Cir.1998).

that the false claims were prepared and mailed through MMC. Under these circumstances, it is possible that the government will be able to prove both the relationship and continuity aspects of this predicate act of racketeering.[37]

For these reasons, I will deny the defendants' motion.

## VI

Finally, the defendants object to the government's notices of other crimes, wrongs or acts pursuant to Federal Rules of Evidence 404(b). These notices, filed on January 3, 2002, and February 22, 2002, disclose that the government intends to introduce the following evidence:

(1) Defendant VINODCHANDRA MODI was convicted of income tax evasion, in violation of 26 U.S.C. § 7201, in the United States District Court for the Western District of Virginia, on or about March 8, 1989.

(2) Defendant VINODCHANDRA MODI improperly authorized other individuals to sign his name and/or use his signature stamp on medical and other records.

(3) Defendants VINODCHANDRA MODI and KAILAS MODI signed medical and other documents in blank.

(4) Defendants VINODCHANDRA MODI and KAILAS MODI signed false and fraudulent income tax returns under the penalty of perjury.

(5) Defendants VINODCHANDRA MODI and KAILAS MODI made false statements and/or provided false information to insurers, medical providers, and others.

(6) Defendants VINODCHANDRA MODI and KAILAS MODI solicited and/or received kickbacks.

(7) Defendants VINODCHANDRA MODI and KAILAS MODI received and dealt in cash.

(8) Defendants VINODCHANDRA MODI and KAILAS MODI falsified and/or omitted material information on medical, billing, and other records.

(9) Defendants VINODCHANDRA MODI and KAILAS MODI made, recorded, and/or reported false and/or misleading diagnoses of patients under their care.

(10) Defendants VINODCHANDRA MODI and KAILAS MODI prescribed and/or distributed controlled substances without legitimate medical purpose and/or outside the bounds of medical practice.

(11) Defendants VINODCHANDRA MODI and KAILAS MODI improperly received, maintained, dispensed, disposed of, and/or accounted for controlled substances.

(12) Defendants VINODCHANDRA MODI and KAILAS MODI billed and/or submitted claims, and/or caused the billing and/or submission of claims, for medically unnecessary office visits, treatments, and procedures.

(13) Defendants VINODCHANDRA MODI and KAILAS MODI prepared and submitted, and caused the preparation and submission, of false and fraudulent claims for payment of medical services.

(14) Defendants VINODCHANDRA MODI and KAILAS MODI engaged in financial and monetary transactions in violation of 18 U.S.C. §§ 1956 and 1957.[38]

---

**37.** *See United States v. Khan,* 53 F.3d 507, 515 (2d Cir.1995) (rejecting argument that defendant did not engage in pattern of racketeering activity because he worked for medical clinics for only short period of time, where there was sufficient showing of continuity because the clinics regularly engaged in defrauding Medicaid).

**38.** Notice of Other Crimes, Wrongs or Acts, Jan. 2, 2002.

All crimes, wrongs, or acts contained in the discovery material made available to the defendants in this case and/or made available by the defendants to the government in reciprocal discovery.[39]

Rule 404(b) permits introduction of other crimes, wrongs, or acts for other purposes than to prove the character of a person, which purposes include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[40] The introduction of such evidence in a criminal prosecution is conditioned upon "reasonable notice in advance of trial" if such notice is requested by the accused.[41]

The defendants contend that the notices are insufficiently precise to qualify as reasonable within the meaning of the rule. As to the disclosures as to tax fraud, the defendants contend that the evidence is inadmissible under 404(b) and thus the notices should be stricken as to such evidence.

In response, the government asserts that it intends at present to introduce other unnecessary medical services similar to those charged in the indictment. It agrees that it will not attempt to introduce or comment upon any other 404(b) acts without leave of court after a hearing.

What constitutes reasonable notice under 404(b) "will depend largely on the circumstances of each case."[42]

██ I find that the notices are sufficient as to similar acts of unnecessary medical services, provided that the government supplies to the defendants prior to trial a chart or summary of such acts, similar to that provided as to the acts actually charged in the case.[43] I will otherwise deny the motion to strike, based on the government's representation that it will not bring up any other matters without prior leave of court. I make no decision at this point as to whether the tax fraud evidence is admissible.[44]

## VII

For the foregoing reasons, it is **ORDERED** that the defendants' motions (Doc. Nos. 70, 71, 72, 74, and 75) are denied.

39. Second Notice of Other Crimes, Wrongs or Acts, Feb. 22, 2002.

40. *See* Fed.R.Evid. 404(b).

41. *Id.*

42. Fed.R.Evid. 404(b) advisory committee's note to 1991 amend.

43. *See United States v. Erickson*, 75 F.3d 470, 478 (9th Cir.1996) (in Medicare fraud case, notice under 404(b) met by government's pretrial discovery disclosures).

44. *See United States v. King*, 879 F.2d 137, 139 (4th Cir.1989) (holding that evidence of false tax return was inadmissible under 404(b).)