**UNITED STATES of America,**

v.

**Vladimir MAGALNIK, and Markera Galustyants, Defendants.**

**Criminal Action No. 3:14-CR-00012**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Signed 04/10/2015

C. Patrick Hogeboom, III, United States Attorneys Office, Roanoke, VA, for United States of America.

Steven David Rosenfield, Rosenfield & Wayland, Charlottesville, VA, Jose M. Quinon, Jose M. Quinon, P.A., David Michael Garvin, David M. Garvin, P.A., Miami, FL, Steven Mark Garver, Law Offices of Steven M. Garver, P.C., Reston, VA, for Defendants.

## MEMORANDUM OPINION

Glen E. Conrad, Chief United States District Judge

This matter is presently before the court on a motion to dismiss and a motion for a bill of particulars filed by each defendant in this case. For the following reasons, the motions to dismiss will be granted and the motions for a bill of particulars will be granted in part and denied in part.

### Factual and Procedural Background

On April 17, 2014, a grand jury returned a two-count indictment against Vladimir Magalnik and Markera Galustyants (collectively, "the defendants"). The indictment alleges that the defendants, along with others known and unknown to the grand jury, operated and controlled several business entities located in Miami, Florida, including North American Management, Inc.; North American Management Enterprises, LLC; and North American Hotel Services, Inc. (collectively, "North American"). North American and its subsidiaries obtained employee leasing contracts for hotel and resort clients in several states, including in the Western District of Virginia. In their contracts with clients, the defendants assumed responsibility for paying employment taxes, providing insurance coverage, and complying with all pertinent labor and immigration laws related to its employees. According to the indictment, however, the defendants failed to do so. Instead, the defendants used North American and its subsidiaries to carry out an elaborate scheme designed to evade federal tax and immigration law for their own financial gain.

Specifically, the indictment alleges as follows: North American employed undocumented foreign nationals. The defendants submitted "false or misleading information in order to obtain certification and approval" for these aliens from the United States Department of Labor (DOL) and Department of Homeland Security (DHS). North American arranged for these aliens to overstay or violate their visa restrictions by allowing them to work without legal status. North American also failed to pay these employees an hourly wage, as required by the labor certification documents it submitted to the government. Instead, North American paid its employees $3.50 for each hotel room cleaned, while charging its hotel clients $9.50 per hour for their work. North American also required its employees to reside in apartments that it controlled, for which it charged $250-$350 per month. These apartments, which contained only minimal furniture, housed between three and eight employees each, including unrelated men and women.

The indictment further alleges that North American failed to withhold taxes from income paid to its workers and failed to report the amounts it paid in wages to the Internal Revenue Service (IRS). Instead, North American would transfer payments made by its hotel clients to its subsidiaries, which in turn paid the employees. North American would label these transfers as "Outside Services" in order to deduct those amounts from its own corporate taxes as Costs of Goods Sold. North American's subsidiaries similarly failed to pay employment taxes.

Count I of the indictment charges the defendants with a multi-object conspiracy to commit offenses against the United States and to defraud the United States, in violation of 18 U.S.C. § 371. The indictment alleges that this conspiracy began on or around January 1, 2003 and continued

until at least September 22, 2008. Count I names five illegal objects of the conspiracy: (a) to "impede the lawful functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of income taxes by deceit, craft, trickery, concealment, and means that are dishonest;" (b) to "knowingly conceal, harbor, and shield illegal aliens from detection... for the purpose of financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii);" (c) to "knowingly use, attempt to use, possess, and obtain immigrant visas and other documents prescribed by statute..., which [the] [d]efendants knew to be procured by false statement or fraud, in violation of 18 U.S.C. § 1546(a);" (d) to "knowingly make...a false statement with respect to a material fact in an application for Alien Employment Certification, in violation of 18 U.S.C. § 1546(b);" and (e) to "corruptly influence, obstruct, and impede a federal grand jury in the Western District of Virginia, in violation of 18 U.S.C. § 1503."[1] The indictment alleges numerous overt acts in furtherance of these five objects, the last of which allegedly occurred on January 2, 2009. See Indictment at 18. Count II of the indictment charges the defendants with the substantive offense of harboring illegal aliens for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and 18 U.S.C. § 2.

On September 16, 2014, Defendant Magalnik filed a motion to dismiss portions of Count I of the indictment. See Docket No. 48. He also filed a motion for a bill of particulars. See Docket No. 49. On September 26, 2014, Defendant Galustyants filed a motion to dismiss and a motion for a bill of particulars that mirror Magalnik's

motions in all material respects.[2] See Docket No. 50, 51. The motions have been fully briefed and were argued on January 22, 2015. They are now ripe for review.

### Discussion

The court will first consider whether portions of the indictment should be dismissed before turning to whether the defendants are entitled to a bill of particulars clarifying the indictment.

### a. Motion to Dismiss

The defendants have moved to dismiss Count I of the indictment on statute of limitations grounds. See Docket Nos. 48, 50. According to Rule 7 of the Federal Rules of Criminal Procedure, an indictment must include "a plain, concise and definite written statement of the essential facts constituting the offense charged..." Fed. R. Crim. P. 7. An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecution of the same offense." United States v. Brandon, 298 F.3d 307, 310 (4th Cir.2002). "If an indictment does not contain every essential element of the offense, it is invalid." United States v. Loayza, 107 F.3d 257, 260 (4th Cir.1997).

A defendant may, at any time before trial, raise a motion alleging a defect in the indictment, including its failure to comport with the applicable statute of limitations. Fed. R. Crim. P. 12(b)(3)(B); see United States v. FNU LNU, No. 06–CR–846, 2007 WL 1149261, at *2 (S.D.N.Y.

---

1. With respect to the obstruction of justice charge, the indictment alleges that, on December 17, 2008, Defendant Magalnik was interviewed by federal agents regarding the allegations set forth in the indictment, and that he made false statements during that interview.

2. Because the defendants' motions advance identical arguments, the court discusses them collectively here.

April 12, 2007). When considering such a motion, the court must accept all allegations in the indictment as true and should regard the indictment in a "practical," rather than "purely technical," manner. United States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir.1994); see United States v. Terry, 257 F.3d 366, 371 (4th Cir.2001) (King, J., concurring) ("It is elementary that a motion to dismiss implicates only the legal sufficiency of [the indictment's] allegations, not the proof offered by the Government."). To warrant dismissal, a defendant must show that the indictment's allegations, "even if true, would not state an offense." United States v. Thomas, 367 F.3d 194, 197 (4th Cir.2004).

 In this case, Count I of the indictment charges the defendants with violating the federal conspiracy statute, 18 U.S.C. § 371. This statute criminalizes two categories of conduct: first, a conspiracy to commit a substantive offense otherwise proscribed by federal law, and second, a conspiracy to defraud the United States or its agencies. See United States v. Vogt, 910 F.2d 1184, 1200 (4th Cir.1990). An indictment under the "offense" prong of § 371 "requires reference to another criminal statute which defines the object of the conspiracy." United States v. Minarik, 875 F.2d 1186, 1186 (6th Cir.1989). An indictment under the "defraud" prong, on the other hand, "stands on its own without the need to refer to another statute which defines the crime." Id.; see Vogt, 910 F.2d at 1200. Instead, a defendant can be charged under the "defraud" prong if he conspires with another to "cheat the government out of property or money," or "to interfere with or obstruct [a] lawful governmental function[ ] by deceit, craft, or trickery, or at least by means that are dishonest." Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924).

 The "offense" and "defraud" prongs "are not mutually exclusive," however. United States v. Arch Trading Co., 987 F.2d 1087, 1091 (4th Cir.1993). "[G]iven conduct may be proscribed by both of the section's clauses." Id. "When both prongs of § 371 apply to the conduct with which a particular defendant is charged, the government enjoys considerable latitude in deciding how to proceed." Id. Indeed, the government may even "list both prongs of § 371 in a single indictment count rather than specifying whether the alleged conspiracy was one to defraud or one to commit an offense." Id. To obtain a conviction under either prong, the government must prove that the defendants intentionally agreed to conspire against the United States in the manner alleged in the indictment, and that one of the conspirators committed an overt act in furtherance of the conspiracy's objectives. Vogt, 910 F.2d at 1202.

In this case, Count I of the indictment charges the defendants under both prongs of § 371. It first charges the defendants with conspiring to obstruct the IRS in its "ascertainment, computation, assessment and collection of income taxes" through "deceit, craft, trickery, concealment, and means that are dishonest," in violation of the "defraud" prong. See Indictment at 11. Count I also charges the defendants with conspiring to commit four substantive crimes in violation of the "offense" prong. Specifically, the indictment charges that the defendants conspired to (1) knowingly harbor illegal aliens for the purpose of financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii); (2) knowingly obtain an immigrant visa by fraud, in violation of 18 U.S.C. § 1546(a); (3) knowingly make a false statement in an application for alien employment certification, in violation of 18 U.S.C. § 1546(a); and (4) obstruct justice, in violation of 18 U.S.C. § 1503. See id. at 11–12.

The defendants have moved to dismiss portions of Count I as barred by the statute of limitations. A conspiracy charged under § 371 is subject to a five-year statute of limitations, unless a different period is provided by law. See 18 U.S.C. § 3282 ("[e]xcept as otherwise expressly provided by law, no person shall be prosecuted...for any offense...unless the indictment is found...within five years next after such offense shall have been committed."); United States v. Head, 641 F.2d 174, 177 (4th Cir.1981). A conspiracy to defraud the United States with respect to its tax laws is subject to a six-year statute of limitations. See United States v. Lowder, 492 F.2d 953 (4th Cir.1974) (limitations period in § 3282 is inapplicable to cases charging conspiracy to defraud through tax evasion, because the six year limitations period set forth in 26 U.S.C. § 6531 applies instead).[3] A ten-year limitations period applies to the harboring of illegal aliens for financial gain in violation of 8 U.S.C. § 1324. See 18 U.S.C. § 3298.

The grand jury returned the indictment in this case on April 17, 2014. The indictment alleges that the conspiracy took place from January 1, 2003 until "at least" September 22, 2008. The last overt act is alleged to have occurred on January 2, 2009. See Indictment at 18. The defendants do not dispute that this time frame satisfies the six- and ten-year statutes of limitations applicable to the alleged conspiracy to defraud the IRS and the alleged conspiracy to harbor illegal aliens for financial gain. They note, however, that the indictment fails to allege any overt act occurring on or after April 17, 2009, as required to satisfy the five-year statute of limitations applicable to the other statutory violations alleged in Count I. The defendants therefore ask the court to dismiss

those offenses from Count I. The government agrees that the indictment does not allege specific acts occurring after April 17, 2009. The government argues however, that it need not allege a timely overt act in the indictment itself, so long as it can prove a overt act for each charged offense occurred within the limitations period at trial. The government thus insists that any statute of limitations concerns can be remedied "by not sending the indictment to the jury and/or using a special verdict form." Docket No. 54 at 8. The court is constrained to disagree.

The statute of limitations is an affirmative defense that must be raised by a defendant. See Biddinger v. Commissioner of Police of City of New York, 245 U.S. 128, 135, 38 S.Ct. 41, 62 L.Ed. 193 (1917). Once a defendant does so, however, "[t]he government bears the burden of proving that it began its prosecution within the statute of limitations period." United States v. Wilson, 118 F.3d 228, 236 (4th Cir.1997). It is well-settled that, in order to obtain a § 371 conviction, the government must prove at trial that an overt act in furtherance of the charged conspiracy occurred within the applicable limitations period. Head, 641 F.2d at 177. Disagreement exists, however, as to whether a timely act must be alleged in the indictment itself. Some courts hold that an indictment that fails to allege a timely overt act is subject to dismissal on its face. See United States v. Davis, 533 F.2d 921, 929 (5th Cir.1976) (error to deny motion to dismiss conspiracy indictment where the indictment failed to allege a overt act within the limitations period, because "for purposes of the statute of limitations the overt acts alleged in the indictment and proved at trial mark the duration of the conspiracy"); United

---

**3.** The defendants maintain that Lowder was wrongly decided and that the limitations period for conspiracy to commit tax fraud is five years. They acknowledge, however, that this court is bound by Lowder. See Docket 48 at 3.

States v. Stoner, 98 F.3d 527, 533 (10th Cir.1996) ("[A]n indictment must allege that the conduct constituting the conspiracy fell within the statute of limitations, and an indictment that does not contain such allegations is subject to dismissal on its face"). Other courts hold that the government can satisfy the statute of limitations by proving a timely overt act at trial, even where the acts alleged in the indictment are untimely. See United States v. Frank, 156 F.3d 332, 339 (2d Cir.1998) ("[T]he statute of limitations may be satisfied by proof of an overt act not explicitly listed in the indictment, as long as a defendant has had fair and adequate notice of the charge for which he is being tried, and he is not unduly prejudiced by the asserted variance in the proof."); United States v. Schurr, 794 F.2d 903, 907–908 (3d Cir.1986) ("[I]t is well settled that the government can prove overt acts not listed in the indictment, so long as there is no prejudice to the defendants thereby, [and] [t]here would appear to be no reason that the government could not satisfy its requisite showing under the statute of limitations by means of an overt act not listed in the indictment").

■ The parties have not cited, and the court has not found, any Fourth Circuit case discussing this particular issue in detail. Nonetheless, the Fourth Circuit appears to approve of the position expressed by the Fifth Circuit in Davis. 533 F.2d at 929. In United States v. Head, the Fourth Circuit cited Davis approvingly, stating that "[t]he government also contends that the jury need not have been instructed to find an overt act alleged in the indictment within the limitations period, but could have avoided the bar of limitations by finding unpled acts. We disagree." Head, 641 F.2d at 178 n.5. Thus, in order to satisfy the statute of limitations in the Fourth Circuit, it appears that an overt act occurring within the limitations period "must be [both] alleged in the indictment and proved

at trial." United States v. Kang, 715 F.Supp.2d 657, 663 (D.S.C.2010).

■ In this case, the indictment fails to allege any overt act committed within five years of the grand jury's return. Visa and alien employment certification fraud, in violation of 18 U.S.C. § 1546(a), and obstruction of justice, in violation of 18 U.S.C. § 1503, are subject to a five-year limitations period. Thus, to the extent that Count I charges the defendants with conspiring to commit those substantive offenses, those charges are time-barred and must be dismissed. Count I survives, however, to the extent that it charges the defendants with conspiring to commit the offense of harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), which is subject to a ten-year limitations period. Count I also survives to the extent that it charges the defendants with conspiring to defraud the IRS, which is subject to a six-year statute of limitations.

The court emphasizes that this decision may not limit the evidence presented at trial in any material way. Many allegations relating to the time-barred offenses are also highly relevant to the remaining charge of conspiracy to defraud the United States. See United States v. Wharton, No. 13–0043, 2014 WL 1430387, at *11 (D.Md. April 10, 2014) (stating that untimely overt acts are nonetheless "pertinent to the continuing offenses at issue" in a § 371 conspiracy case); see also Smith v. United States, —— U.S. ——, 133 S.Ct. 714, 720, 184 L.Ed.2d 570 (2013) ("A statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution."). Nor does this decision limit the government's ability to file a superseding indictment that properly alleges overt acts within the limitations period for the three

offenses dismissed today, should it choose to do so.

For the reasons stated, the defendants' motions to dismiss will be granted. Count I(c), I(d), and I(e) of the indictment will be dismissed for failure to satisfy the statute of limitations.

### b. Motion for a Bill of Particulars

The defendants have also moved for a bill of particulars clarifying the indictment. Rule 7 of the Federal Rules of Criminal Procedure provides that a district court "may direct the government to file a bill of particulars," which "is a defendant's means of obtaining specific information about charges brought in a vague or broadly-worded complaint." United States v. Dunnigan, 944 F.2d 178, 181 (4th Cir.1991), rev'd on other grounds, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The purpose of a bill of particulars "is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial." United States v. Automated Med. Labs., Inc., 770 F.2d 399, 405 (4th Cir.1985). When considering whether to order a bill of particulars, therefore, the court must consider "whether deprivation of the information sought will render the defendant subject to unfair surprise." United States v. Sampson, 448 F.Supp.2d 692, 696 (E.D.Va.2006) (citing United States v. Fletcher, 74 F.3d 49, 53 (4th Cir.1996)). Particularly in cases alleging fraud, "it is critical that the government identify in the indictment the dates of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents." Id.

The defendants assert that, in furtherance of an "open file" policy, the government has produced 135,422 rows of Excel data, 13,929 pages of documents, 79 photographs, and 4 audio CDs. See Docket No. 49 at 3. The defendants argue that this enormous amount of discovery actually "impede[s] rather than assist[s] the defense in its understanding of the government's case." United States v. Modi, 197 F.Supp.2d 525, 530 (W.D.Va.2002). They contend that "to be shown thousands of documents without any direction as to the significance of the various pieces of paper [does] not comport with fairness." Id. The defendants thus seek a bill of particulars that specifies (1) the dates on which the defendants allegedly filed fraudulent tax returns, which tax documents are allegedly fraudulent, and the alleged falsity contained in those documents; (2) the dates on which the defendant allegedly filed false applications for alien employment, which documents or forms are allegedly false or fraudulent, and the alleged falsity contained in those documents; and (3) the names of the aliens that the defendants allegedly illegally concealed and the manner in which they did so.

With respect to the tax information sought, the court does not believe that the defendants are entitled to a bill of particulars. In the indictment, the government has included a table that identifies the specific entity that allegedly filed a false return, the date on which that return was filed, and the specific alleged falsity contained therein. See Indictment at 13–14. Although the court acknowledges that corporate tax returns can be voluminous and complex, it believes that the indictment adequately supplies the defendants with the information needed to determine the tax returns on which the government intends to rely at trial. See, e.g., Modi, 197 F.Supp.2d at 530 (in health care fraud case, no bill of particulars warranted where "the defendants concede that they have been provided with charts or summaries prepared by the government's case agent identifying the patients at issue, the dates of services, the suspect treatments,

and the amount paid for those allegedly improper services").

With respect to visa information sought, on the other hand, the court believes that a bill of particulars is warranted. The indictment includes tables that identify each entity that allegedly submitted a fraudulent visa application, the date on which that application was filed, the allegedly false statement(s) contained therein, and the petition number associated with the false application. See Indictment at 16-19. The defendants maintain, however, that these tables "reference 4,125 pages of immigration and labor petitions," including "applications, supplemental information, newspaper clippings, references, educational transcripts, passports, visas, and birth certificates." Docket No. 49 at 6. They argue that, without further direction from the government, they "will be left to sift through thousands of files...with limited ability to reasonably identify which documents the [g]overnment will attempt to prove false at trial." Id. at 7. The court agrees, particularly considering that the government has suggested that it may also rely on evidence not set forth in the indictment. The government is thus directed to file a bill of particulars that lists the specific visa and/or work applications that it intends to introduce at trial and explains, in general terms, how each application is believed to be false or fraudulent.

The court also believes that the defendants are entitled to know the identity of the particular aliens whom they allegedly harbored illegally. The indictment names these individuals by initials only. See Indictment at 15-16, 20. Considering that the defendants employed hundreds of workers at facilities across the country over a substantial period of time, the court believes that initials alone are inadequate. The government is thus directed to include in its bill of particulars the full names of any foreign national on whom the government intends to rely at trial, whether or not that individual is named in the indictment.

The court acknowledges that some need for the information sought by the defendants may have been obviated by its decision dismissing certain charges from Count I of the indictment. As discussed above, however, the court believes that much of this evidence remains potentially relevant to the remaining conspiracy charges. The identity of the foreign nationals is also clearly relevant to Count II, which charges the defendants with the substantive crime of harboring aliens illegally. Thus, to the extent that the government still intends to rely on visa applications or foreign nationals to prove its case at trial, it should provide a bill of particulars to the defendants in accordance with this opinion.

## Conclusion

For these reasons, the defendants' motions to dismiss are granted. Count I(c), I(d), and I(e) of the indictment will be dismissed as time-barred. The defendants' motions for a bill of particulars are granted in part and denied in part. The government is ordered to provide the defendants with a bill of particulars that identifies the particular foreign national(s) and the specific visa and work applications on which it intends to rely at trial, in accordance with this opinion. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendants and all counsel of record.